**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

DUANE STARKS, JEVON KEARSE,
LAVERANUES COLES, LITO SHEPPARD,          CASE NO. 17-cv-62366-JIC
and All Others Similarly Situated,

        Plaintiffs,                                                       JURY DEMANDED
                                                                        (Over $75,000.00)

        v.

GARY J. STERN, CHUHAK & TECSON, P.C.,
 a Professional Corporation, DAVID SHINER,
and JEANNE KERKSTRA,

        Defendants.
_____/

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, DUANE STARKS, JEVON KEARSE, LAVERANUES COLES, LITO SHEPPARD, and All Others Similarly Situated (collectively, the "Plaintiffs"), by and through undersigned counsel, file this First Amended Complaint against Defendants, GARY J. STERN, CHUHAK & TECSON, P.C., DAVID SHINER, JEANNE KERKSTRA, (collectively referred to as the "Defendants") and allege as follows:

### I.      THE PARTIES AND PARTICIPANTS IN SCHEME

A.    Parties

    1.    Plaintiff DUANE STARKS ("Starks") is an individual who resides in the Southern District of Florida and is a citizen of Florida.

    2.    Plaintiff JEVON KEARSE ("Kearse") is an individual who resides in the Southern District of Florida and is a citizen of Florida.

3.      Plaintiff LAVERANUES COLES ("Coles") is an individual who resides in Florida and is a citizen of Florida.

4.      Plaintiff LITO SHEPPARD ("Sheppard") is an individual who resides in Florida and is a citizen of Florida.

5.      Defendant CHUHAK & TECSON, P.C. ("Chuhak") is a law firm located at 30 South Wacker, Suite 2600 in Chicago, Illinois that has its principal offices in Cook County, Illinois.

6.      Defendant GARY J. STERN ("Stern") was, and Defendants DAVID SHINER ("Shiner") and JEANNE KERKSTRA ("Kerkstra") are, admitted to the Bar in the State of Illinois, and at the times and places relevant herein, were principals of Chuhak, acting as duly authorized agents and representatives of Chuhak, and acting within the scope of their employment.[1]

B.      Participants

7.      At all relevant times, Rumpelstiltskin Inc. ("Rumpelstiltskin") was owned by Richard Nichols ("Nichols"), Leon A. Greenblatt, III ("Greenblatt"), Andrew Jahelka ("Jahelka"), and is a holding company for many of the entities used by the persons identified later in this First Amended Complaint as the "Landfill Operators" to perpetrate fraudulent schemes. Rumpelstiltskin was the parent of a wholly-owned subsidiary, Resource Technology Corporation ("RTC"). RTC entered into agreements with 24 landfills throughout the United States whereby RTC acquired rights to develop and construct gas-collection facilities at the landfills in order to

---

[1] Defendant Stern was disbarred on consent on May 18, 2017 in connection with pleading guilty in federal court to aiding and assisting in the preparation and presentation to the Internal Revenue Service of false income tax returns. *See* www.iardc.org/ldetail.asp?id=361803456.

produce and sell electricity from landfill gas in exchange for paying the landfill owners royalties measured as a percentage of electricity sales.  *Green Gas*, 903 F.3d at 140.

8.      At all relevant times, Scattered Corporation was a South Dakota corporation with its principal office in Chicago, Illinois and was owned and controlled by Jahelka, Greenblatt, and Nichols.

9.      At all relevant times, Banco PanAmericano Inc. was a South Dakota corporation owned and controlled by Greenblatt.

10.      At all relevant times, Giddyup, Inc., a corporation whose state of incorporation is currently unknown, was a company owned and controlled by Jahelka.

11.      At all relevant times, ROLJFLP, Inc., was a Delaware corporation owned and controlled by Nichols.

12.      At all relevant times, Archimedes Financial, LLC, was a Nevada limited liability owned and controlled by Horrell.

13.      At all relevant times, Methane Bio, LLC, Resource Technology Corporation and Delaware Gas and Electric, Inc. were used by the Landfill Operators and the Defendants to carry out the fraudulent scheme that is the subject of this First Amended Complaint.

## II.      JURISDICTION AND VENUE

14.      This Court has jurisdiction over this matter under 28 U.S.C § 1332 because the amount in controversy exceeds $75,000.00 and the Plaintiffs and Defendants are citizens of different states.

15.      This Court has jurisdiction over the Defendants because they purposefully availed themselves of Florida by conducting business in Florida, committing tortious conduct in Florida by harming multiple Florida residents including Plaintiffs herein.

16.     Venue is proper as the overwhelming majority of transactions giving rise to Plaintiffs' harm and injury occurred and were executed in the Southern District of Florida.

17.     The individual Plaintiffs are residents of Florida and Plaintiffs, Duane Starks and Jevon Kearse, currently reside in the Southern District of Florida.

18.     Defendant Chuhak & Tecson, PC is a law firm that engages in the practice of law nationally and maintains offices in Chicago, New York and New Jersey.  Chuhak & Tecson solicits clients nationally including the Southern District of Florida.

### III.     INTRODUCTION

19.     Rumpelstiltskin could spin straw into gold.  Defendants, along with others discussed below, thought they could do the same for garbage, spinning it into tax credits.  The Commissioner of the Internal Revenue Service, the United States Tax Court, and the Court of Appeals for the D.C. Circuit all uniformly disagreed, but unfortunately not before Defendants and others swindled Plaintiffs out of millions of dollars.  See *Green Gas Delaware Statutory Trust v. Commissioner*, 903 F.3d 138 (D.C. Cir. August 14, 2018).

20.     The scheme at the center of this First Amended Complaint for relief involved sale of bogus tax credits alleged to have been generated from non-conventional fuel sources in compliance with Section 29/45K of the Internal Revenue Code (known as FNS tax credits). Stern, a former equity principal at Chuhak, has pled guilty to tax crimes and admitted that he deprived the government and the Plaintiffs out of millions of dollars.  (Ex. 1, Stern Plea Agreement).   Stern was sentenced to 18 months in prison on September 13, 2017.  (Ex. 2, 9/13/17 Transcript from Stern Sentencing Hearing).   Stern further admitted that the other Defendants and Chuhak management were active and knowing participants in this fraudulent scheme.  (Ex. 3, Stern Position Paper, pg. 9).  On July 14, 2016, the United States Tax Court also found that the tax credits

purchased by the Plaintiffs and other class members were illegitimate, save for the very few legitimate credits that were used to conceal the true nature of the scheme in *Green Gas Del. Statutory Trust v. Commissioner* 147 T.C. No. 1 (2016) (available at www.ustaxcourt.gov/UstcInOp/OpinionViewer.aspx?ID=10860). That determination was upheld in its entirety by the United States Court of Appeals for the District of Columbia Circuit on August 14, 2018. See *Green Gas Delaware Statutory Trust v. Commissioner*, 903 F.3d 138 (D.C. Cir. August 14, 2018).  All deadlines for further review have passed.  See Doc. 107, at pg. 4.

21.     The scheme began by the Defendants and others approaching wealthy individuals and entities with a simple proposition: the sale of a certain amount of Federal Income Tax credits for a certain smaller amount of money. The Defendants and others represented that FNS credits were legitimate and that Plaintiffs and others could substantially decrease their tax liability by purchasing the FNS tax credits. In concert with the Landfill Operators, the Defendants perpetrated the multi-year scheme of selling the bogus FNS credits to unsuspecting individuals and entities, including Plaintiffs, for tens of millions of dollars. Defendants and the Landfill Operators accomplished this by funneling the credits through a web of partnerships and limited liability companies controlled by them exclusively with the intention of concealing the tax credits' illegitimacy. All of the entities listed in this First Amended Complaint were created for the sole purpose of effectuating the scheme and had no legitimate business purpose.

22.     At all relevant times, Defendants and the Landfill Operators knew that over 95% of the tax credits they were selling were not legitimate.  (Ex. 5, November 2, 2006 Memorandum from Shiner to Stern)[2]. Despite this, Stern, with the assistance of other attorneys at Chuhak &

---

[2] Ex 4 intentionally omitted.

Tecson P.C. and in concert with the Landfill Operators, sold the bogus FNS credits to unsuspecting individuals and entities, including Plaintiffs, for tens of millions of dollars.  Subsequent to the sale of the knowingly illegitimate FNS credits, Defendants and the Landfill Operators created bogus tax returns and schedule K-1 statements in an attempt to conceal the illegitimacy of the tax credits from both the purchasers of such credits and the Internal Revenue Service and transmitted same both through the mail and electronically in furtherance of the scheme to sell, and get away with selling, bogus tax credits. Moreover, the attorneys at Chuhak & Tecson P.C. knowingly charged Plaintiffs and other parties similarly situated excessive fees in connection with the preparation of fraudulent tax documents.

23.     After the Internal Revenue Service began to investigate the tax returns of individuals and entities to whom Defendants and the Landfill Operators sold credits, Defendants and the Landfill Operators submitted false statements and documents to the IRS in the hope that they could somehow fool the tax authorities into thinking that the credits were legitimate.  By virtue of the Landfill Operators' managing interests in the respective tax shelter entities created by Defendants, the Landfill Operators had a fiduciary duty to defend the transaction in Tax Court and the Revenue Agent Reports for the tax credits for 2005 – 2007 show that the Defendants and the Landfill Operators substantially lacked any proof, documentation, or other evidence that could have substantiated the validity of some or all of the tax credits and the deductions that were ultimately disallowed, adding to the Plaintiffs' damages.  The July 14, 2016 United States Tax Court ruling and D.C. Circuit decision set forth the numerous reasons that the tax credits were bogus.

## IV.      FACTUAL SUMMARY

24.      This case stems from the concerted conduct of the Defendants and the Landfill Operators to induce individuals, partnerships, and corporations such as Plaintiffs into acquiring fraudulent tax credits that were represented by Defendants and the Landfill Operators to be in compliance with Internal Revenue Code Section 29/45K. The tax scheme to defraud the Plaintiffs and other class members was conducted through a pattern of racketeering activity (mail and wire fraud) and was accomplished through the efforts of an association-in-fact-enterprise.

25.      The Merrillville Trust scheme is subject to a separate lawsuit currently pending in Chicago, Illinois.  This lawsuit does not pertain to claims related to the Merrillville Trust or the 2007 Green Gas Arrangement.

26.      Internal Revenue Code Section 29, renumbered as I.R.C. Section 45K beginning January 1, 2006, permitted producers of certain qualified fuels from nonconventional sources, including biomass (such as methane gas produced from garbage landfills), to claim tax credits known as FNS tax credits for the production of such fuels, if such fuels were sold to an unrelated third party.

27.      Under IRC Section 29, any FNS tax credits generated in years prior to 2006 which were unable to be claimed in the year they were generated could be carried forward and be used in future years only against the alternative minimum tax.

28.      Under IRC Section 45K, any FNS tax credits generated in 2006 or later years which were unable to be claimed in the year generated could be carried forward and used in future years as general business credits, meaning these were not limited to reducing just the alternative minimum tax.

29.     Michael Horrell ("Horrell"), Richard Nichols ("Nichols"), Leon A. Greenblatt, III ("Greenblatt"), Andrew Jahelka ("Jahelka"), Kevin Werner ("Werner"), Elizabeth Sharp ("Sharp"), and Michael May ("May") (collectively the "Landfill Operators"), through the entities that comprised the "Green Gas Arrangement," marketed to the public through various means including through their attorneys at Chuhak & Tecson P.C. the sale of tax credits as a way for individuals to reduce their income tax liability.

30.     Chuhak & Tecson, through its agents, Stern, Shiner and Kerkstra, held themselves out to have knowledge and expertise in the field of tax law and assisted the Landfill Operators in the sale and promotion of the tax credits to the public. The Defendants engaged in the marketing and sale of bogus FNS credits through their own professional networks, including accountants and lawyers throughout the country.

31.     The Defendants and the Landfill Operators devised a scheme to sell abusive and illegal tax credits under the auspices of Section 29 and Section 45K through the entities identified as part of the "Green Gas Arrangement".

32.     All of the Defendants and other co-conspirators knew or should have known that these arrangements likely would be heavily scrutinized by the Internal Revenue Service ("IRS"), be deemed abusive and not in compliance with the applicable section, and/or expose those participating in such arrangements to costly IRS audits, including substantial tax liabilities, penalties, and interest.

## V.      FACTUAL ALLEGATIONS

A.     IRS Scrutinizes Abusive Section 45K Claims and Stern Pleads Guilty to Tax Fraud

33.     Producers of fuel from nonconventional sources ("FNS") may be entitled to claim a federal income tax credit for the production and sale of the fuel. See I.R.C. § 45K (formerly

I.R.C. § 29). The Internal Revenue Code strictly limits the manner, timing and availability of these credits ("FNS Credits").

34. FNS credits have been heavily abused in the recent past. During this time unscrupulous attorneys, accountants, and tax return preparers have sold schemes falsely purporting to entitle the customers to millions of dollars of FNS credits. S*ee, e.g., United States v. George Calvert et al*., Case No 09-cv-00618 (M.D. Fla. Apr. 2, 2009); *United States v. Ronald Fontenot et al*., Case No. 09-cv-00893 (E.D. Tex. Apr. 2, 2010); *United States v. Sally Hand-Bostick et al.*, Case No. 09-cv-01075 (N.D. Tex. Aug. 2, 2010). To date, at least 18 individuals have been permanently enjoined from marketing or selling FNS credits, and at least 3 individuals have been convicted of crimes in connection with these credits. *See United States v. Anderson*, Case No. 09-cr-00177 (M.D. Fla. Apr. 15, 2009) (Robert Anderson convicted of conspiracy to defraud the United States and to commit mail fraud); *United States v. Calvert*, Case No. 10-cr-00325 (M.D. Fla. Aug. 4, 2010) (George Calvert convicted of conspiracy to commit wire fraud and money laundering); *United States v. Guido*, Case No. 10-cr-00325 (M.D. Fla. Aug. 4, 2010) (Gregory Guido convicted of conspiracy to commit wire fraud and money laundering).

35. In November 2013, the United States government filed a Complaint for Permanent Injunction and Other Relief against Defendant Gary Stern for actions at issue in this Complaint and for other criminal conduct that has been adjudicated separately. *See United States v. Gary J. Stern*, Case No. 13-cv-07844 (N.D. Ill. Nov. 1, 2013).  (Ex. 6, Stern Injunction).  To resolve that Complaint, Defendant Stern entered into a plea deal with the government, where, among other things, he agreed to be permanently enjoined from preparing, filing, or assisting others in preparing or filing federal taxes other than for himself or his family. (Ex. 6, Injunction). *United States v. Gary Stern*, Case No. 14-cr-00580 (N.D. Ill. Oct. 14, 2014)). On February 27, 2014, Defendant

Stern, per the terms of his settlement with the Justice Department, sent Plaintiffs a copy of the Injunction to which he agreed.   The United States government filed an eight-count criminal indictment against Defendant Gary Stern in this District concerning another related scheme ("the Merrillville Trust") to sell bogus FNS tax credits. *See United States v. Gary Stern*, Case No. 14-cr-00580 (N.D. Ill. Oct. 14, 2014). (Ex. 7, Stern Indictment).

36.     On September 7, 2016, Stern pled guilty to tax fraud.  (Ex. 1).

37.     On September 13, 2017, Stern was sentenced to 18 months in prison.  (Ex. 2).

38.     Stern has admitted that other Defendants were actively involved in the scheme to defraud the Plaintiffs and the United States government.  (Ex. 3, pg. 8-10).

B.     The Green Gas Arrangement

39.     Until August 7, 2005, Section 29 of the Internal Revenue Code allowed a credit for the production and sale of fuel from non-conventional sources, including from non-conventional sources, including from landfill biomass (i.e. rotting trash). On August 8, 2005, Section 29 was reassigned as Section 45K and became effective for tax years after 2005. The purpose of Section 29 was to subsidize the activity of converting landfill gas into electricity.

40.     To qualify for FNS credits, a taxpayer must meet various requirements, including producing fuel and selling it to an unrelated person during the taxable year for which the credit is claimed. I.R.C. § 45K(a)(2) (formerly I.R.C. § 29(a)(2)).

41.     An owner of a qualified property or energy producing facility who is not able to take full advantage of the tax credit may, in some circumstances, sell an economic interest in the property or facility to someone who is able to take advantage of the tax credit.

42.     The amount of the FNS credits allowed in a given year is based on the amount of fuel the taxpayer produces and sells that year for which gas is converted into usable energy. The

taxpayer is entitled to FNS credits in proportion to his or her ownership interest in the gross sales from the property or facility. I.R.C. § 45K(d)(3) (formerly I.R.C. § 29(d)(3)).

43.     The taxpayer must acquire economic benefits and burdens related to the property or facility, including the potential to receive additional economic benefit from the sale of fuel after the credit expires.

44.     RTC was a company located in Chicago purportedly specializing in landfill maintenance and natural gas extraction and has been bankrupt since 1999.

45.     The owners and board members of RTC have included the Landfill Operators: Greenblatt, Nichols, Jahelka, Connelly and Werner.

46.     Several individuals from RTC, including Greenblatt, Nichols, Jahelka and John Connelly ("Connelly"), hired Defendant Stern to create a tax structure for funneling FNS credits to people who wanted tax benefits. The Defendants assisted and facilitated the Landfill Operators to implement and operate what became known as the Green Gas Arrangement, essentially an organization comprised of entities utilized to sell bogus FNS credits.

47.     During this time period, Defendant Kerkstra boasted that the Defendants had more experience with FNS credits than any other firm.

48.     Defendant Chuhak and the Landfill Operators, drafted the documents necessary to create the following tax shelter entities: Gas Delaware Business Trust, Green Gas Delaware Statutory Trust, Bradshaw Gas General Partnership, Ciao Gas General Partnership, Buon Giorno Gas General Partnership, 2004 Gas General Partnership, Methane Blue LLC, Methane Green, LLC, and Red Gas LLC; Pontiac Statutory Trust; Methane Bio LLC; Allen Gas GP; Bradshaw Gas GP; Perry Gas, GP, Jaguar Gas GP; Buon Giorno Gas GP; Craig GP; Australia Gas GP; Casper Gas GP; Jones Gas GP; Zoeller Gas GP; Irwin Gas GP; JMK Gas GP; 2006 Methane Gas GP;

DJRJ Gas GP; 2005 Medinah Gas GP; Winged Foot Gas GP; Bloomington GP; Methane Green LLC; Baltic Gas GP; Methane Blue LLC; Colt Gas GP; China Gas GP; Rocca Gas GP; DK Gas GP; BV Gas GP; Villapiano Gas GP; Pink Gas LLC; Werdna Gas GP; Red Gas LLC; Delaware Gas & Electric, Inc.; LaMonica Gas G.P.; Orange Gas; Davis Gas GP; Ciao Gas GP; Arrivederci Gas GP; and San Bernardino Gas GP; (Collectively, "the Green Gas Arrangement").

49.     The named Plaintiffs in this case purchased FNS credits from Green Gas Arrangement entities Bradshaw Gas, GP, Buon Giorno Gas, GP, Ciao Gas Baltic Gas GP, 2004 Gas Partners GP, Perry Gas, GP and Davis Gas GP.   The Green Gas Arrangement served as the vehicle by which the Defendants conducted their illegal acts.

50.     The Green Gas Arrangement worked as follows. An individual seeking to reduce his or her federal income tax liabilities sent money to either the Defendants or the Landfill Operators in exchange for a percentage of FNS credits that would exceed the individual's buy-in cost. Thereafter, the Chuhak Defendants allocated a certain dollar amount of FNS credits to that participant for use on that participant's federal income tax return. Generally, FNS credits reduce an individual's tax liability on a dollar-for-dollar basis, meaning that $100 of FNS credits – purchased for less than $100 – would eliminate $100 in tax liability.

51.     The FNS credits that the Chuhak Defendants allocated to participants originated with an entity called Green Gas Delaware Statutory Trust ("Green Gas Trust"). Green Gas Trust purportedly accumulated these FNS credits as a result of landfill gas sales agreements with RTC.[3]

---

[3] Green Gas was only able to establish agreements with RTC on 19 of the 24 landfills.  Green Gas failed to establish such agreement with the other 5 landfills, which just so happened to be the only landfills where there was ever operational equipment capable of turning landfill gas into electricity. *Green Gas*, 903 F.3d at 141.

52.     Green Gas Trust is a Delaware trust that has been controlled by Landfill Operators Connolly and Werner. The Defendants created and represented Green Gas Trust, and in addition, Defendant Stern personally prepared that entity's tax returns (or at least signed them).

53.     On the 2005 and 2006 federal income tax returns for Green Gas Trust, Stern prepared a tax return that claimed FNS credits in the amounts of $5.40 million and $3.65 million, respectively.

54.     In order to allocate FNS credits from Green Gas Trust to individual participants, the Defendants funneled the credits through a complex layering structure that utilized over 115 partnerships, companies, and other entities. On information and belief, this was done so as to obfuscate the true nature of the scheme and conceal it from the IRS and therefore attempt to prevent the IRS from determining the origin and validity of the FNS credits.

55.     The Defendants' control over the Green Gas Arrangement is demonstrated in a memo of Defendant Kerkstra to Defendant Stern. In the memo, Kerkstra references a spreadsheet given to her by Landfill Operator Nichols concerning the Green Gas Arrangement. She goes through a detailed analysis of how she (along with Defendant Stern and Shiner) simply re-adjust the tax credits, capital contributions and other fees to give the appearance of legitimacy. (Ex. 8, Memo from Kerkstra to Stern dated May 12, 2006).

56.     The May 12, 2006 memorandum also confirms that the amount of tax credits received by purchasers like Plaintiffs did not actually correlate to the amount of the contribution. The Defendants always provided an explanation as to why an individual or entity was not receiving the amount of credits originally contracted for.

57.     The Defendants prepared the tax returns that served as the conduit for funneling FNS credits from the Green Gas Trust to individual participants.

58.     In order to participate in the Green Gas Arrangement, participants signed various documents prepared by the Defendants, including purported conflict of interest waivers. These documents were not provided to the participants until after they tendered money to the Defendants or the Landfill Operators, as the case may be. Participants paid varying amounts in order to receive FNS credits, depending upon their income tax liability.

59.     These contributed funds were held and disbursed at Defendant Stern's and the Landfill Operators' direction.

60.     The Defendants used the 115 partnerships, companies, and other entities to funnel over $11 million in FNS credits from Green Gas Trust to hundreds of participants, including Plaintiffs, from 2005 through 2007.

61.     Besides Plaintiffs, these individuals included other professional athletes, wealthy professionals, and Defendant Stern's business associates.

62.     The Defendants prepared the federal income tax returns that were used to funnel these tax credits to participants.

63.     Defendant Stern personally signed many of these tax returns.

64.     The FNS credits that the Defendants funneled to participants in the Green Gas Arrangement originated on the tax returns of the Green Gas Trust that Defendant Stern had prepared. The credits themselves purportedly were generated in connection with landfill gas that Defendant Stern and the Landfill Operators claimed had been produced from at least 24 different landfills located throughout the United States.

65.     The FNS credits that Stern sold to participants in the Green Gas Arrangement were bogus for a number of reasons. Despite knowing the bogus nature of the FNS credits, the

Defendants and the Landfill Operators represented to every purchaser including Plaintiffs that the credits were legitimate.

66.     First, Green Gas Trust and RTC did not have any legal rights to the landfill gases claimed at most of the landfills. In fact, after RTC's rights to extract gas at certain of these landfills were terminated, RTC's employees were prohibited from entering the landfills. (Ex. 9, February 21, 2006 Email from Edmund Burke To Kerkstra).

67.     Second, many of the landfills that FNS credits were being claimed from did not have a gas collection system in place, while others did not have an operational gas-to-energy conversion facility.

68.     Third, many of the landfills did not have sufficient landfill gas to sell for energy-conversion (i.e. the gas was not of sufficient quality to be sold; in most instances the gas was, at most, flared).

69.     Between 2005 and 2006, the Chuhak Defendants used the Green Gas Arrangement to funnel over $12.4 million in FNS credits to their customers. Approximately $11.2 million of these credits were bogus for one or more of the reasons identified above and subsequently disallowed by the IRS.

70.     The IRS did, in fact, allow a small dollar amount of credits in the rare instances in which it ascertained that the landfill had an operational gas-to-energy conversion facility that sold the converted fuel. The Defendants and the Landfill Operators used the fact that some converted gas was sold from a few landfills as a fig leaf to conceal the defects present at the vast majority of the landfills, in an attempt to legitimize the entire scheme.

71.     For example, in 2005 the IRS only allowed $450,360 out of the over $5.3 million the Green Gas Delaware Statutory Trust tried to claim on its tax return. The IRS allowed only

$98,335 out of the over $4 million in FNS credits that the Defendants and the Landfill Operators allocated to participants in 2006 in connection with the Green Gas Arrangement.

72.     Backdating was prevalent throughout the Green Gas Arrangement. For example, Stern explicitly directed the other employees of Chuhak to backdate checks that were used to funnel money between the various entities he controlled. The Stern Indictment also notes the prevalence of backdating. (Ex. 7).

73.     Documents were routinely executed with backdating to whatever date was expedient for purposes of facilitating the scheme without regard to the true transaction date.

74.     As a result, the date on any given document is often meaningless.

C.      The Defendants' Role in the Green Gas Arrangement

75.     The Defendants provided "legal services" for the Green Gas Arrangement, including rendering professional opinions on how to create the Green Gas Arrangement in compliance with Section 29/45K of the Tax Code.  Chuhak was also hired to give advice to potential purchasers in order to induce them to purchase the bogus FNS credits.  That "legal advice" consisted of assistance to the Landfill Operators in the design and operation of a byzantine scheme intended to conceal the truth from both the IRS and unwitting participants.

76.     The Defendants worked together with the Landfill Operators to design and operate the Green Gas Arrangement.

77.     Defendant Stern holds himself out as an expert on FNS credits and the relevant tax laws, and has authored several legal opinions on the topic.

78.     Defendant Stern controlled and operated most of the partnerships and other entities that he used to funnel FNS credits to participants in the Green Gas Arrangement. For example,

Defendant Stern managed at least 48 partnerships and companies, personally represented at least 17 entities, was an officer of at least 12 entities, and was the sole shareholder of at least 10 entities.

79.    At Defendant Stern's direction, employees of Chuhak, including Defendant Kerkstra, drafted agreements that the individual participants signed in order to participate in the Green Gas Arrangement.

80.    Defendant Stern personally signed these agreements on behalf of each partnership in his capacity as president of the partnership's managing general partner.

81.    Defendant Stern, along with the other Chuhak Defendants, purported to represent each of the hundreds of entities that were used to implement the Green Gas Arrangement. At Defendant Stern's request, participants, including Plaintiffs, executed forms that purported to waive any conflict involved in the transaction.

82.    By limiting the number of other attorneys involved in the transaction, the Defendants were able to reap additional legal fees and exercise greater control of the Green Gas Arrangement, thus minimizing or eliminating outside scrutiny.

83.    Defendant Stern held and personally disbursed (or directed other Chuhak Defendants to disburse) the funds that participants, including Plaintiffs, contributed to the Green Gas Arrangement.

84.    The Defendants prepared over 170 federal income tax returns that they used to funnel FNS credits to participants in the Green Gas Arrangement.

85.    The Defendants sent correspondence and other documents to Plaintiffs and other participants, including Schedules K-1 and explanatory cover letters that identified the amount of false FNS credits that they had allocated to Plaintiffs and other participants for use in a particular tax year.

86.     Defendant Stern and the other Chuhak Defendants sent Plaintiffs various tax forms which purported to show that Plaintiffs were entitled to hundreds of thousands of tax credits for the year 2005. (Ex. 10, Correspondence b/t Chuhak and Plaintiffs).

87.     The Defendants and the Landfill Operators solicited and sold FNS tax credits to the Plaintiffs. Plaintiffs now know that millions in purported FNS tax credits were nonexistent and could not be claimed in the manner claimed by the Defendants and the Landfill Operators.

88.     Defendant Stern was identified as a point of contact on many of the landfill gas sale agreements that purported to legitimize the manner in which the Defendants allocated FNS credits to Plaintiffs and other participants.

89.     All of the Defendants benefitted from the operation of the Green Gas Arrangement. The Defendants wrongly collected exorbitant fees and profits from Plaintiffs and other participants in the Green Gas Arrangement.

D.     Marketing of the Green Gas Arrangement

90.     The Chuhak Defendants and the Landfill Operators established an elaborate web of partnerships and companies to give the appearance to Plaintiffs and other participants that they could legitimately claim FNS credits on their individual income tax return.

91.     In reality, the Defendants were simply utilizing these entities as the means by which to sell bogus FNS credits to Plaintiffs and other participants for a stated amount, *i.e.* "to monetize tax credits provided under 26 U.S.C. § 45K." *Green Gas*, 903 F. 3d at 141.

92.     The Defendants and the Landfill Operators marketed these tax credits as a tax benefit, not as an investment in a landfill or in a gas-to-energy conversion facility.

93.     Based on the purported legitimacy of the FNS credits, individuals, including Plaintiffs, purchased credits from the entities in the Green Gas Arrangement and unknowingly claimed the false FNS on their subsequent federal income tax returns.

94.     The Defendants used several subpromoters, including some of the Landfill Operators, to sell the bogus FNS credits to Plaintiffs and other participants.

95.     At the Defendants' coaching, these subpromoters, in tendering the paperwork to a prospective participant including Plaintiffs, would simply state "[h]ere is the information for the purchase of the tax credits."

96.     In Plaintiffs case, Landfill Operator Horrell brought on Karen Brenner as an unwitting subpromoter. Based on the fraudulent representations of Horrell and the Chuhak Defendants about the legitimacy of the Green Gas Arrangement, Karen Brenner sought out purchasers.

97.     The United States Tax Court found that the Defendants solicited and compensated promoters, including the Landfill Operators, to sell FNS credits to participants including Plaintiffs. (Ex. 4, pg. 43).

98.     Defendant Stern and the other Defendants often disguised some of the payments to the Landfill Operators and promoters as fees for "consulting services."

99.     Ultimately, the IRS began examining the tax returns of participants who participated in the Green Gas Arrangement.

100.    As discussed above, the IRS ultimately disallowed over 95% of the FNS credits claimed by participants.

101.    The Defendants acted together to perpetuate a fraud upon the Plaintiffs and other class members by presenting clearly erroneous and false legal opinions and fraudulent tax forms

concerning the full deductibility of the tax credits; and the Landfill Operators, by using the false legal conclusions of the Chuhak Defendants and their own misrepresentations to "sell" Plaintiffs and other participants the bogus tax credits.

102.    The Defendants also used the entities controlled by Defendant Stern and the Landfill Operators to create the appearance that they actually had the right to sell the FNS credits.

103.    Based on the misrepresentations of the Defendants and the Landfill Operators, Plaintiffs and the other participants decided to purchase the FNS tax credits being sold by all Defendants.

104.    The Plaintiffs, along with other class members, are liable for back taxes, interest, penalties and professional fees as a result of the disallowed tax benefits they claimed from the Green Gas Arrangement.

## VI.    CO-CONSPIRATORS

105.    Whenever in this First Amended Complaint reference is made to any act, deed, or transaction of any business entity, the allegation means that the business entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control, or transaction of the business's affairs.

106.    The acts alleged in this First Amended Complaint to have been done by Defendants were authorized, ordered and condoned by their parent business entities and authorized, ordered and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control or transaction of their business affairs.

107.    All Defendants were engaged in a conspiracy to defraud and each of them is liable for the actions of the other as if they themselves had committed the acts.

108.    The Defendants were acting as the agents of the others with either express or implied authority to so act in furtherance of their common goal to operate an enterprise and all Defendants benefited financially therefrom and ratified the acts of the others.

109.    Therefore, each of the Defendants is jointly and severally liable for the actions of every other Defendant committed in furtherance of the conspiracy.

## VII.    CLASS ALLEGATIONS

110.    Plaintiffs bring this action on their own behalf and, pursuant to Rule 23(b)(1)(A), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, as a class action on behalf of themselves and the nationwide class of all persons (the "Class Members," the "alleged class" or the "Class") defined below against all Defendants:

> All persons, partnerships, and corporations who (1) participated and/or purchased bogus tax credits stemming from the Green Gas Arrangement, (2) claimed the bogus tax credits from the Green Gas Arrangement for tax years 2005 through 2007 and (3) were assessed back-taxes, penalties, and/or interest by the Internal Revenue Service as a result of such tax deductions. Excluded from the Class are: Defendants; Landfill Operators; and the federal governmental entities.

111.    Plaintiffs believe that there are numerous Class Members geographically dispersed throughout the United States such that joinder is impracticable. These Class Members may be identified from information and records maintained by the Defendants and related third parties.

112.    The Plaintiffs and the Class Members each and all have tangible and legally protectable interests at stake in this action.

113.    The claims of the Plaintiffs and the Class Members have common origin and share a common basis. The claims of all Class Members originate from the same fraudulent transaction, the sale of bogus tax credits, predicated by the Defendants.

114.    The Individual Plaintiffs state a claim for which relief can be granted that is typical of claims on the Class Members as a whole. Thus, the class representatives have been the victims of the same illegal activity as each member of the class.

115.    If brought and prosecuted individually, each of the Class Members would necessarily be required to prove the instant claim upon the same material and substantive facts, upon the same remedial theories and would be seeking the same relief.

116.    The claims and remedial theories pursued by the Plaintiffs are sufficiently aligned with the interests of the Class Members to ensure that the universal claims of the alleged class will be prosecuted with diligence and care by the Plaintiffs as representative of the Class.

117.    There are questions of law and fact common to the alleged class. Such common questions include, *inter alia*:

    a.    Whether the FNS credits sold by Defendants under the Green Gas Arrangement for the tax years 2005 through 2007 complied with each element of Section 29/45K;

    b.    Whether all the Defendants represented to Plaintiffs and to other potential Class Members that tax credits had actually been generated in compliance with Section 29/45K for the Green Gas Arrangement in the years 2005 through 2007;

    c.    Whether all the Defendants represented to the Plaintiffs and to other potential Class Members that Section 29/45K tax credits sold by Defendants under the Green Gas Arrangement could be properly claimed by Plaintiffs and other class members;

    d.    Whether the Defendants engaged in a pattern of racketeering activity in violation of Florida RICO laws;

    e.    Whether the Defendants' overt and/or predicate acts in furtherance of the conspiracy and/or aiding and abetting resulted in or proximately caused and causes injury to the Plaintiffs' and Class Members' business or property or irreparably harmed and harms the Plaintiffs and the alleged class and if so, the appropriate relief to which they are entitled;

    f.   Whether Defendants' acts and practices constitute violations of applicable law for which Plaintiffs and the Class Members are entitled to recover restitution or damages or for which disgorgement of ill-gotten monies is appropriate;

    g.   Whether Defendants' actions constitute mail and wire fraud; and

    h.   Whether Defendants have been unjustly enriched through the activities described herein.

118.    The facts are uniform for each of Plaintiffs and class members.

119.    The Defendants systematically assisted the Landfill Operators as follows:

    a.   The FNS credits that the Defendants funneled to Plaintiffs in the Green Gas Arrangement originated on the tax returns of the Green Gas Trust that Defendant Stern had prepared. The credits themselves purportedly were generated in connection with landfill gas that Stern and the Landfill Operators claimed had been produced from at least 24 different landfills located throughout the United States.

    b.   Green Gas Trust did not directly have any rights to the gas that was purportedly collected from these landfills. Instead, it entered into purported lease agreements with RTC with respect to these gas rights. RTC, in turn, had originally obtained these gas rights as a result of various contracts it entered into with landfill owners. In an attempt to legitimize the credits, Green Gas Trust then entered into purported landfill gas sales agreements with RTC.[4]

    c.   The FNS credits sold to Plaintiffs in the Green Gas Arrangement were bogus for a number of different reasons. First, Green Gas Trust and RTC did not have any legal rights to the landfill gases claimed at some of the landfills. In fact, after RTC's rights to extract gas at certain of these landfills were terminated, RTC's employees were prohibited from entering the landfills. Second, as mentioned in note 3, many of the landfills did not have a gas collection system in place, while others did not have the operational gas-to-energy conversion facility. Third, many of the landfills did not have sufficient landfill gas to sell for energy conversion (*i.e.*, the gas was not of sufficient quality to be sold; in most instances the gas was, at most, flared).

    d.   Defendant Stern and the other Chuhak Defendants used the fact that some converted gas was sold from a few landfills as a fig leaf in an attempt to legitimize the entire scheme.

---

[4]    But see Note 3.

   e.   Defendant Stern and the Chuhak Defendants organized and operated the Green Gas Arrangement.

   f.   Defendant Stern controlled and operated most of the partnerships and other entities that he used to funnel FNS credits to the participants in the Green Gas Arrangement. For example, Stern managed at least 48 partnerships and companies, personally represented at least 17 entities, was an officer of at least 12 entities, and was sole shareholder of at least 10 entities.

   g.   At Stern's direction, Defendant Kerkstra drafted agreements that individual participants signed in order to participate in the Green Gas Arrangement. Stern personally signed these agreements on behalf of each partnership in his capacity as president of the partnership's managing general partner.

   h.   Stern purported to represent each of the hundreds of entities that he used to implement the Green Gas Arrangement. At Stern's direction, participants executed forms that purported to waive any conflict of interest with respect to these transactions.

   i.   Stern prepared (or directed others in the preparation of) over 170 federal income tax returns that he used to funnel FNS credits to participants in the Green Gas Arrangement. In addition, Stern signed over 80 federal income tax returns that someone else at Chuhak & Tecson had prepared.

   j.   The Defendants prepared and sent correspondence and other documents to participants, including Schedules K-1 and explanatory cover letters, that identified that amount of the false FNS credits that they had allocated to them for use in a particular tax year.

   k.   Stern was identified as a point of contact on many of the landfill gas sale agreements that purported to legitimize the manner in which he allocated FNS credits to participants. He also registered with the IRS at least 33 tax shelters in connection with the Green Gas Arrangement.

120.   Adjudications with respect to individual members of the Class would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to the action or could substantially impair or impede their ability to protect their interests.

121.   Defendants have acted or refused to act on grounds generally applicable to the Class, making appropriate final relief with respect to the Class as a whole. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying

adjudications with respect to individual members of the alleged Class, which would establish incompatible standards of conduct for the party opposing the Class. Such incompatible standards, inconsistent or varying adjudications on what, of necessity, would be the same essential facts, proof and legal theories, would create and allow to exist inconsistent and incompatible rights within the Plaintiffs Class. Further, the failure to permit this cause to proceed as a class action under Rule 23(b)(1)(A) would be contrary to the beneficial and salutary public policy of judicial economy in avoiding a multiplicity of similar actions. The Plaintiffs also allege that declaratory and injunctive relief is appropriate for the Class as a whole, making certification appropriate under Rule 23(b)(2). The Plaintiffs also allege that questions of law and fact applicable to the Class predominate over individual questions and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Therefore, certification is appropriate under Rule 23(b)(3). Failure to permit this action to proceed under Rule 23 would be contrary to the public policy encouraging the economies of attorney and litigant time and resources.

122.    The named Plaintiffs allege that they are willing and prepared to serve the Court and proposed Class in a representative capacity with all of the obligations and duties material thereto.

123.    The self-interests of the named Class representative are co-extensive with and not antagonistic to those of the absent Class Members. The proposed representatives will undertake to well and truly protect the interests of the absent Class Members.

124.    The named Plaintiffs have engaged the services of counsel indicated below. Plaintiffs' counsel is experienced in complex litigation, will adequately prosecute this action and will assert, protect and otherwise represent well the named Class representative and absent Class Members.

125.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members of the Class is impracticable. There will be no difficulty in the management of this action as a class action.

126.    The Plaintiffs will fairly and adequately protect the interest of the Class and have no interests adverse to or which directly and irrevocably conflict with interest of other Class Members.

## VIII.   DAMAGES

127.    As a consequence of Defendants' conduct and racketeering violations, Plaintiffs and the other Class Members have sustained and damage to their business and property in the form of substantial expenses incurred for professional fees, disallowed credits resulting in substantial tax liability, substantial expenses incurred in dealing with the Internal Revenue Service, incurred penalties and interest, and other damages in excess of $75,000.00. All members of the respective Class were affected in same manner by Defendants fraudulent and/or wrongful conduct.

## IX.   FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING

128.    Plaintiffs and the other Class members had no knowledge of Defendants' unlawful scheme, could not have discovered Defendants' unlawful scheme and could not have discovered Defendants' unlawful conduct at an earlier date by the exercise of due diligence. As described above, Defendants affirmatively concealed their illegal acts and these acts only recently became known to the Plaintiffs through the diligence of the United States Internal Revenue Service. As a result of Plaintiffs' lack of knowledge of the effects of Defendants' unlawful scheme, Plaintiffs assert the tolling of any applicable statutes of limitation affecting the right of action by Plaintiffs and other Class Members.

129.    Upon each and every instance that Defendants failed to disclose their illegal conduct, Defendants knew or should have known that the undisclosed information was material to those consumers who reasonably believed Defendants' conduct to be lawful and not fraudulent. Plaintiffs relied on the acts and omissions of Defendants to their detriment. Defendants knew or should have known that Plaintiffs were relying upon Defendants during this time period. Defendants took gross advantage of the lack of knowledge of Plaintiffs.

130.    Plaintiffs were not injured until the 2016 United States Tax Court Opinion was upheld by the D.C. Circuit without further challenge as of November 13, 2018, when no further challenges could arise.

131.    Defendants have committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four years from the date of the filing of this action. Such overt acts include the illegal actions regarding the fraudulent scheme described herein.

132.    As the federal government has recognized, Defendant Stern and the other Defendants concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the corrupt endeavor, the purpose of the corrupt endeavor, and the acts done in furtherance of the corrupt endeavor.

133.    The Defendants and the Landfill Operators controlled all aspects of the enterprise through the various entities and control over all documentation.

134.    Given Defendants' and the Landfill Operators' control over all aspects of the enterprise and the corresponding documentation, Plaintiffs could not know of the fraudulent activity.

135.    Plaintiffs are not tax experts and in claiming the purported tax credits on their returns, relied on their fiduciary relationships with the (i) Chuhak Defendants as their tax advisor,

(ii) Methane Bio, LLC (the tax matters partner) and (iii) the Landfill Operators, as managing general partner(s) of the entities that formed the Green Gas Arrangement.

136.    The Defendants gave repeated oral and written assurances that the tax credits were legitimate, both before and after Plaintiffs purchased the bogus credits.

137.    Therefore, each instance in which Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly relied upon representations and omissions constitutes part of a continuing violation and operates to toll any applicable statute of limitation. Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

## COUNT I – VIOLATIONS OF FLA. STATUTE 895.05 (FLORIDA RICO) BY CONSPIRING TO VIOLATE FLA. STATUTE 895.03

138.    Plaintiffs repeat and re-allege each and every prior allegation in Paragraphs 1-137 as if fully set forth herein.

A.    The Enterprise

139.    An "enterprise" means any individual, partnership, corporation, business trust, or other legal entity, or group of individuals associated in fact although not a legal entity, and it includes illicit as well as licit enterprises and entities.  Fla. Stat. 895.02(5)

140.    The Green Gas Arrangement is a RICO enterprise (the "Enterprise") as described in Fla. Stat. 895.02(5) that was created by the Defendants and under the Defendants' common control. The Enterprise consists of: Gas Delaware Business Trust, Green Gas Delaware Statutory Trust, Bradshaw Gas General Partnership, Ciao Gas General Partnership, Perry Gas, GP, Buon Giorno Gas General Partnership, 2004 Gas General Partnership, Methane Blue LLC, Methane Green, LLC, and Red Gas LLC; Pontiac Statutory Trust; Methane Bio LLC; Allen Gas GP;

Bradshaw Gas GP; Jaguar Gas GP; Buon Giorno Gas GP; Craig GP; Australia Gas GP; Casper Gas GP; Jones Gas GP; Zoeller Gas GP; Irwin Gas GP; JMK Gas GP; 2006 Methane Gas GP; DJRJ Gas GP; 2005 Medinah Gas GP; Winged Foot Gas GP; Bloomington GP; Methane Green LLC; Baltic Gas GP; Methane Blue LLC; Colt Gas GP; China Gas GP; Rocca Gas GP; DK Gas GP; BV Gas GP; Villapiano Gas GP; Pink Gas LLC; Werdna Gas GP; Red Gas LLC; Delaware Gas & Electric, Inc.; LaMonica Gas G.P.; Orange Gas; Davis Gas GP; Ciao Gas GP; Arrivederci Gas GP; and San Bernardino Gas GP; Banco PanAmericano Inc., Scattered Corporation; Rumpelstiltskin USA Corporation; Giddyup, Inc., ROLJFLP, Inc.; and Archimedes Financial, LLC .

141.    The above entities were created and operated to facilitate the scheme of the Defendants, that is, by serving as the legal entity selling the FNS credits to the Plaintiffs and others. The layers of ownership interest were meant to obscure the true origin (or lack thereof) of the tax credit along with trying to confuse and discourage any investigation into the tax credits origin.

142.    In fact, after the IRS began to investigate the tax returns, Defendants hoped that they could simply bury the IRS investigator in paper work in the hope the IRS would simply give up and not question the tax credits.

143.    All the Defendants used the Green Gas Arrangement as a RICO enterprise, and individually and through their agents, the Landfill Operators, represented to the Plaintiffs and Class Members that the tax credits being sold through the Enterprise's entities qualified for such treatment under Section 29/45K, that the landfills were generating and had generated sufficient energy from landfill gas such that tax credits were available in excess of the amount to be paid by Plaintiffs and Class Members, and that such tax credits were validly claimable on the tax returns of Plaintiffs and Class Members.

144.     In reality, the Defendants knew that the tax credits being sold did not qualify under I.R.C. Section 29/45K and therefore could not support the promised tax benefits. The Green Gas Arrangement was devised solely as a vehicle to obfuscate the true nature the bogus tax credits and allow for sale to a large number of victims. This allowed Defendants to generate the largest amount of fees and commissions for themselves. The Defendants have made millions of dollars with this arrangement.

145.     At all times relevant, the Enterprise was engaged in, and its activities affected, interstate and foreign commerce. This "association in fact" Enterprise had a structure and organization and existed apart from its predicate acts.  The Enterprise's components functioned together as a continuing unit, i.e., they were under the control of Defendants, and existed for a common purpose, i.e., for the economic benefit and gain of the Defendants who controlled the Enterprise, as further described below.  The Enterprise had longevity sufficient to permit each legal entity constituting the Enterprise to pursue the Enterprise's purpose.  Each Defendant, including each legal entity Defendant, is distinct and separate from the association-in-fact enterprise of which they are a component part. As described further below, Defendants associated with the Enterprise, and conducted and participated, directly or indirectly, in the conduct of the affairs of the Enterprise through their involvement in the underlying racketeering offenses as well as through the continuous concealment and promotion of the activities of the Enterprise, which constituted violations of the mail fraud and wire fraud statutes.

146.     The Defendants engaged in a common scheme, transaction, and course of conduct described herein in connection with the design, promotion and sale of the Green Gas Arrangement tax credits, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices, and a course of business that operated as a fraud upon the Plaintiffs and the Class.

147.     The purpose and effect of the Defendants' plan, transaction, and course of conduct was to generate huge fees and commissions by monetizing the Landfill Operators' bogus tax credits through the Green Gas Arrangement.

148.     Defendants maintain an interest in and control of the Enterprise and also conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

149.     Defendants control and participation in the Enterprise was necessary for the successful operation of Defendants' scheme.

150.     The Enterprise, consisting of an association the legal entities established and controlled by the Defendants, has a structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

B.     Conducting the Affairs of the Enterprise

151.     Section 29/45K caught the attention of unscrupulous accountants and others because tax credits under this section can reduce an individual's tax liability on a dollar-for-dollar basis.

152.     The appeal in selling the bogus tax credits is that their creation and validity can be easily masked, complete with voluminous paperwork and a specific tax code section referenced to create the illusion of validity.

153.     By creating a web of entities (the Enterprise) and sham agreements, Defendants were able to obscure the true nature of the FNS credits and prevent even the most sophisticated consumer from identifying their true nature.

154.     The sole business of the Enterprise, established and controlled by the Defendants was to facilitate a fraudulent scheme of selling FNS credits.

155.    The Defendants were only concerned with selling as many fraudulent tax credits through the vehicle of the Enterprise, as possible in order to maximize the profits for the Defendants.

156.    Furthermore, by controlling every aspect of the Enterprise's constituent parts and the information about the FNS credits, Defendants were able to give the appearance that the claimed FNS credits were legitimate.

157.    Each of the following participants played an important role in the conduct of the affairs of the Enterprise:

a.      Chuhak & Tecson P.C. and its agents – the Chuhak Defendants, led by Defendant Stern, created designed, and implemented the Green Gas Arrangement. Additionally, the Chuhak Defendants produced bogus tax returns, Schedule K-1s, and other documents supporting the legitimacy of the FNS credits. They also furnished these materials to the Landfill Operators to help in the sale and promotion of the Green Gas Arrangement and actually sold and promoted the Green Gas Arrangement themselves through misrepresenting that the tax credits being sold through the Enterprise's entities qualified for such treatment under Section 29/45K, that the landfills were generating and had generated sufficient energy from landfill gas such that tax credits were available in excess of the amount to be paid by Plaintiffs and Class Members, and that such tax credits were validly claimable on the tax returns of Plaintiffs and Class Members.

b.      Landfill Operators – the Landfill Operators were instrumental in helping Defendant Stern and the Chuhak Defendants create and implement the Green Gas Arrangement. Greenblatt, Nichols, Jahelka, Sharp, May, Horrell and Werner were all board members and/or officers and owners of RTC where the FNS credits are alleged to have originated. Furthermore, they hired Stern and Chuhak to create the tax structures, which were used to funnel and obscure the true nature of

the credits.  Finally, they held themselves out as having knowledge and expertise in FNS tax credits. They used that alleged knowledge to help in the promotion and sale of the credits to Plaintiffs and the Class through misrepresenting that the tax credits being sold through the Enterprise's entities qualified for such treatment under Section 29/45K, that the landfills were generating and had generated sufficient energy from landfill gas such that tax credits were available in excess of the amount to be paid by Plaintiffs and Class Members, and that such tax credits were validly claimable on the tax returns of Plaintiffs and Class Members.

158.    The Defendants intended to commit mail and wire fraud in connection with the promotion and operation of the Green Gas Arrangement because the Defendants knew that the FNS credits they were selling were not legitimate and could not be claimed as a tax credit. They could not be claimed as a tax credit because the gas was in most instances not converted to electricity or was nonexistent.

159.    Unfortunately, the purchasers of the FNS credits (Plaintiffs and the Class) from the Enterprise entities have been deemed by the IRS to have underreported their income for the years in which the FNS credits were claimed, and have been assessed penalties and interest for said underpayment. Plaintiffs and the Class continue to incur thousands of dollars in additional accounting and legal fees in connection with the IRS investigation into their tax returns.

C.    The Racketeering Violation

160.    From in or about 2005, and continuing up through at least 2014, the aforementioned Defendants, each of whom are persons associated with, or employed by the Enterprise, did knowingly and unlawfully conduct or participate, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of Fla. Stat. 895.02(7), all in violation of Fla. Stat 895.03.

161.    Plaintiffs allege that the Defendants engaged in the alleged criminal activities with the intent to defraud Plaintiffs of their business and property. The Defendants also worked with others to defraud Plaintiffs of money or property by concealing material facts from Plaintiffs resulting in loss of Plaintiffs' property and monies.  Plaintiffs allege that these activities constitute conduct committed by and through commission of mail fraud, and wire fraud, acts indictable as 'racketeering activity," as that term is defined in Fla. Stat. 895.02(8)

D.    Pattern of Racketeering Activity

162.    Plaintiffs allege that the course of conduct engaged in by the Defendants constituted at least two incidents of racketeering conduct that had the same or similar intents, results, accomplices, methods of commission, or were interrelated by the distinguishing characteristics of the FNS tax credit scheme set out above which were not isolated incidents, thereby constituting a pattern of racketeering activity, as that term is defined in Fla. Stat. 895.02(7).

163.    All predicate acts had the same purpose of utilizing the Enterprise to misrepresent the nature of the investments so that the Defendants could defraud those who purchased the purported credits out of millions of dollars.  Plaintiffs allege that the continuity of the pattern of racketeering activity is "closed-ended" inasmuch as a series of related predicate offenses extended since at least year 2005 (a substantial period of time).  Moreover, the continuity of the pattern of racketeering can be established under "open-ended continuity" as the predicate offenses are part of the Enterprise's regular way of doing business, and the predicates are attributed to Defendants' operating as part of a long-term association that existed for criminal purposes.

E.    Racketeering Activity

164.    FLA Statute 895.02(8)(b) provides that "racketeering activity" means any conduct defined as "racketeering activity" under 18 U.S.C. § 1961(1).

165.    18 U.S.C. § 1961(1) provides that "racketeering activity" means any act indictable under any of the following provisions of Title 18, United States Code: § 1341 (relating to mail fraud) and § 1343 (relating to wire fraud).   Mail and wire fraud were a regular way in which the Enterprise conducted business. The Defendants routinely used both the United States Postal Service (and other couriers) along with email, fax and the telephone to communicate, to exchange bogus documents, solicit business, file bogus tax returns, collect cash and otherwise perpetrate and further the scheme, including to Plaintiffs in the Southern District of Florida.

166.    For the purpose of executing and/or attempting to execute their transaction to defraud and to obtain money by means of false pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories for mail matter and things to be sent or delivered by the United States Postal Service and received matter and things therefrom including but not limited to tax documents, contracts, instructions, correspondence, opinion letters, and others.

167.    For the purpose of executing and/or attempting to execute their transaction to defraud and to obtain money by means of false, pretenses, representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire matter and things therefrom including but not limited to tax documents, contracts, instructions, correspondence, opinion letters, funds, and others.

168.    In those matters and things sent or delivered by the United States Postal Service, by wire and through other interstate electronic media, Defendants falsely and fraudulently misrepresented and fraudulently suppressed material facts from Plaintiffs and the Class as described above, in violation of 18 U.S.C. §§ 1341 and 1343, including, but not limited to, the following:

a. That the FNS credits being sold through the Green Gas Arrangement had been generated in a manner compliant with Section 29/45K of the Tax Code;

b. That the Green Gas Arrangement complied with all federal tax laws and regulations; and

c. That the Green Gas Arrangement was a legitimate way to reduce tax liability.

169.    The predicate acts of mail and wire fraud began when Defendants collected funds in exchange for FNS credits made available to their victims and continued unabated thereafter. The Defendants and the other wrongdoers, on their own and through the Enterprise, which was used as a vehicle to defraud investors, defrauded Plaintiffs and the Class as set out above.

170.    The Defendants intentionally and knowingly made material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs and the Class, for the purpose of deceiving them and thereby obtaining financial gain.  The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. Plaintiffs and the Class were injured as a result of the misrepresentations and omissions in carrying out the transactions and subsequently filing tax returns using the treatment reflected on the bogus tax returns.

171.    The Defendants made continual use of mail and wire transmissions to effectuate their fraudulent scheme. Additionally, the Defendants transmitted numerous specific fraudulent statements to Plaintiffs and the Class through the mail, by email, telephones or fax.

172.    The Defendants intentionally and knowingly made theses material misrepresentations and intentionally and knowingly suppressed material facts from Plaintiffs and the Class for the purpose of deceiving them and thereby obtaining financial gain. The Defendants either knew or recklessly disregarded that the misrepresentations and omissions described above were material. Plaintiffs and the Class were injured as a result of the misrepresentations and

omissions in carrying out the transactions and subsequently filing tax returns using the treatment opined.

173.    Set forth below are specific examples of predicate acts of mail and wire fraud committed by Defendants pursuant to their scheme to defraud the individual Plaintiffs through the operation of the Enterprise.

| DATE/TIME PERIOD | DOCUMENT TYPE | FALSITY | ACTION BY | STATUTE VIOLATION |
|---|---|---|---|---|
| January 1, 2005 | Letter from Stern to L.Coles re: Investment into Bradshaw | Soliciting the sale of Section 45K tax credits/Advising to Invest; Attempt to Waive Conflict | Stern/Chuhak & Tecson | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| January 1, 2005 | Amended and Restated Partnership Agreement - Bradshaw | Drafting and Transmittal of False Partnership Agreement | Stern/Chuhak & Tecson | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| January 1, 2005 | Promissory Note for $177, 197.41 | Drafting and Allowing Transmittal of False Promissory Note | Stern/Chuhak & Tecson/Werner | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| April 11, 2006 | Letter Re: Schedule K-1 for Bradshaw | Representing that FNS credits could legally be claimed | Stern/Chuhak & Tecson | 26 USC §7206(1); 18 U.S.C. §1341 |
| – January 1, 2005 | Letter from Stern to L. Coles re: Investment into Bradshaw | Soliciting the sale of Section 45K tax credits/Advising to Invest; Attempt to Waive Conflict | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| January 1, 2005 | Amended and Restated Partnership Agreement – Perry Gas | Drafting and Transmittal of False Partnership Agreement | Stern/Chuhak & Tecson/Werner | 18 U.S.C. §1341; 26 USC §7206(1) |

| January 1, 2005 | Promissory Note for $30,148.17 | Drafting and Transmittal of Promissory Note | Stern/Chuhak & Tecson /Werner | 18 U.S.C. §1341; |
|---|---|---|---|---|
| – April 11, 2006 | Letter Regarding K-1 – Schedule for Perry Gas | Representing that FNS credits could be legally be claimed | Stern/Chuhak & Tecson | 26 USC §7206; 18 U.S.C. §1341 |
| – January 1, 2005 | Letter from Stern to J.Kearse re: Investment into Bradshaw | Soliciting the sale of Section 45K tax credits/Advising to Invest; Attempt to Waive Conflict | Stern/Chuhak & Tecson | 18 U.S.C. §1341; 18 U.S.C. §1343 |
| March 30, 2007 | Promissory Note for $196,464.32 | Drafting and Allowing Transmittal of False Promissory Note | Stern/Chuhak & Tecson/Werner | 26 USC §1341; 18 U.S.C. §1343 |
| April 11, 2006 | Letter Re: K-1 Schedule for Bradshaw | Representing that FNS credits could legally be claimed | Stern/Chuhak & Tecson | 26 U.S.C § 7206; 18 U.S.C. §1341 |
| – July 1, 2005 | Letter from Stern to Starks re: investment into Ciao Gas | Soliciting the sale of Section 45K tax credits/Advising to Invest; Attempt to Waive Conflict | Stern/Chuhak & Tecson | 26 USC §1341; 18 U.S.C. §1343 |
| April 11, 2006 | Letter Re: K-1 Schedule for Ciao Gas | Representing that FNS credits could legally be claimed | Stern/Chuhak & Tecson | 26 USC. §7206; 18 U.S.C. §1341 |
| July 1, 2005 | Letter from Stern to Sheppard re: investment into Ciao Gas | Soliciting the sale of Section 45K tax credits/Advising to Invest; Attempt to Waive Conflict | Stern; Chuhak & Tecson | 18 U.S.C. §1341; 18 U.S.C. §1343 |
| – April 11, 2006 | Letter Re: K-1 Schedule for Ciao Gas | Representing that FNS credits  could legally be claimed | Stern/Chuhak & Tecson | 26 USC. §7206; 18 U.S.C. §134118 U.S.C. §1341 |
| – July 1, 2005 | Letter from Stern to Peterson re: investment into | Soliciting the sale of Section 45K tax credits/Advising to Invest; Attempt to Waive Conflict | Stern/Chuhak & Tecson | 26 USC. §7206; 18 U.S.C. §1341 |

|  | 2004 Gas General Partnership |  |  |  |
|---|---|---|---|---|
| – April 11, 2006 | Letter Re: K-1 Schedule for _____ | Representing that FNS credits could legally be claimed | Stern/Chuhak & Tecson/Werner/Archimedes | 26 USC. §7206; 18 U.S.C. §1341 |

174.    Set forth below are specific examples of predicate acts of mail and wire fraud

committed by Defendants pursuant to their scheme to defraud the corporate Plaintiff, Rauxa Direct,

LLC through the operation of the Enterprise.

| DATE/TIME PERIOD | DOCUMENT TYPE | FALSITY | ACTION BY | STATUE VIOLATION |
|---|---|---|---|---|
| March 1, 2006 | Letter and Email to Dave Kobza | Soliciting the sale of Section 45K tax credits; providing for a certain amount of credits for a certain contribution amount | Stern/Chuhak & Tecson | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| April 4, 2006 | Check for $46,336 sent via US Mail | Alleged to be in exchange for FNS credits | Jim Howard (subpromoter working for Defendants in the sale of credits) | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| April 4, 2006 | Check for $28,600 sent via FedEx | Alleged to be in exchange for FNS credits | Archimedes Financial LLC & Michael Horrell for Methane Bio | 18 U.S.C. §1341 & 18 U.S.C. §1343 |
| April 11, 2006 | Letter Re: Schedule K-1 for Ciao Gas General Partnership | Stating that $35,049 worth of FNS credits could be claimed | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| April 11, 2006 | Letter Re: Schedule K-1 for Arrivederci Gas General Partnership | Stating that $40,222 worth of FNS credits could be claimed | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| April 15, 2006 | Letter Re: 2006 Schedule K-1 for Baltic | Stating that $200,811.00 worth of FNS credits could be claimed | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |

|  | Gas General Partnership |  |  |  |
|---|---|---|---|---|
| April 17, 2006 | Tax Return for Green Gas Delaware Statutory Trust | Filing false tax return | Stern/Chuhak & Tecson/Werner | 18 U.S.C. §1341; 26 USC §7206(1) |
| September 7, 2006 | Submission of Ciao Gas GP Tax Return | Filing false tax return | Stern/Chuhak & Tecson /Werner | 18 U.S.C. §1341; 26 USC §7206(1) |
| November 7, 2006 | Wire Transfer | Receiving $156,000 for tax credits | Archimedes Financial LLC & Michael Horrell | 18 U.S.C. §1343 |
| March 30, 2007 | Letter Re: Schedule K-1 for Arrivederci Gas General Partnership | Stating a net-short term capital loss of $22,938 | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| March 30, 2007 | Letter Re: Schedule K-1 for Ciao Gas Limited Partnership | Stating a net-short term capital loss of $24,907 | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| March 30, 2007 | Letter Re: Green Gas Entities K-1 from Kerstra to Werner | Engaging in the filing of false tax documents | Kerkstra/Chuhak & Tecson/Werner | 26 USC §7206; 18 U.S.C. §1341 |
| April 2, 2007 | Letter Re: Foreclosure of Interest in Davis Gas General Partnership | Preparing a false Schedule K-1 | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| April 5, 2005 | Letter Re: Green Gas K-1s From Dimitra Anderson to | Preparing fraudulent K-1s through the mail | Anderson/ Chuhak & Tecson/Werner | 26 USC §7206; 18 U.S.C. §1341 |

| | Kevin Werner | | | |
|---|---|---|---|---|
| April 17, 2007 | Tax Return of Green Gas Delaware Statutory Trust | Engaging in the filing of false tax documents | Delaware Gas & Elec. Inc. /Stern/Chuhak & Tecson/Werner | 26 USC. §7206; 18 U.S.C. §1341 |
| May 15, 2007 | Letter Re: Green Gas Entities 2006 Delaware Form 300 | Engaging in the filing of false tax documents | Markus; Chuhak & Tecson | 26 USC. §7206; 18 U.S.C. §1341 |
| August 7, 2007 | Letter Re: Foreclosure of Interest in Baltic Gas GP | Providing a False K-1 Alleging Plaintiff can claim over $200k in tax credits | Stern/Chuhak & Tecson | 18 U.S.C. §1341 |
| – March 26, 2008 | Tax Return of Jaguar Gas General Partnership | Engaging in the filing of false tax documents | Kerkstra/Chuhak & Tecson/Werner/Delaware Gas & Electric Inc. | 26 USC. §7206; 18 U.S.C. §1341 |
| – June 30, 2008 | Tax Return of Pontiac Statutory Trust | Engaging in the filing of false tax documents | Stern/ Chuhak & Tecson/Werner/Archimed es | 26 USC. §7206; 18 U.S.C. §1341 |
| – June 30, 2008 | Tax Return of Green Gas Delaware Business Trust | Engaging in the filing of false tax returns | Stern/Chuhak & Tecson/Werner/Delaware Gas & Electric Inc. | 26 USC. §7206; 18 U.S.C. §1341 |

175.    The Plaintiffs and the Class therefore have been injured in their business or property as a result of Defendants' racketeering activities as described above and throughout this First Amended Complaint.

176.    The Defendants and Landfill Operators associated with each other to form the Enterprise that sold fraudulent tax credits to the Plaintiffs.  The Defendants committed criminal and fraudulent acts when promoting and selling the illegal tax credits.

177.    The arrangement described herein was an ongoing organization with an ascertainable structure and purpose beyond the predicate acts and the conspiracy to commit such acts, by which the Defendants and the Landfill Operators functioned as a continuing unit.

178.    The Defendants and Landfill Operators engaged in a pattern of unlawful activity consisting of a scheme or artifice to defraud Plaintiffs.  The Defendants used their legal reputation to induce Plaintiffs to purchase the illegal FNS credits that had been misrepresented as valid credits by the Defendants and the Landfill Operators.  The Defendants and the Landfill Operators engaged in a pattern of criminal activity to defraud Plaintiffs and others into participating in the Green Gas Arrangement for the sole purpose of enriching Defendants and the Landfill Operators. Defendant Stern has admitted to criminal conduct related to the Enterprise.  (Ex. 1).

179.    The Defendants and the Landfill Operators knew that the FNS credits sold to Plaintiffs were not valid but promoted, marketed and sold the FNS credits anyway in order to generate substantial fees.

180.    The Defendants engaged in this scheme or artifice to defraud over a period of no less than three (3) years that the FNS credits were sold.

181.    Plaintiffs would not have purchased the bogus FNS credits without the Defendants and the Landfill Operators inducing them into the transaction.  This act was related to the rest of their Tax Shelter Schemes in purpose, results, participants, methods of commission and similarity of victims. This behavior constitutes a pattern of unlawful activity over an extended period of time.

182.    Defendants' and Landfill Operators' conduct of the Enterprise and their pattern of illegal activity in connection with the promotion of the Tax Shelter Schemes commenced no later than in 2005 and continued through at least 2014. While Defendant Stern has been enjoined and criminally convicted for his unlawful conduct, the Defendants still engage in the conduct of

business and Landfill Operators still engage in the same fraudulent conduct that has embroiled them in litigation all over the country.

183.    Defendants' participation was integral to Plaintiffs and other claimants entering into the Green Gas Arrangement and claiming the FNS credits because they conferred legitimacy upon the Green Gas Arrangement. Without the Defendants participation, claimants would not have undertaken to purchase FNS credits. The Defendants were integral to the conduct of the Enterprise.

184.    Defendants' conduct as set forth herein was in concert with the Landfill Owners' conduct and planned and prearranged with and known by each of the other said participants in the Enterprise pursuant to the common scheme to sell bogus FNS credits.

185.    Defendants and Landfill Owners conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity and criminal activity consisting of, inter alia, more than two acts of (i) federal racketeering activity (mail fraud, wire fraud, interstate transportation in aid of racketeering), (ii) obstruction of justice, (iii) commission of crimes by accessories after the fact, (iv) money laundering, (v) engaging in transactions in property derived from unlawful activity and (vi) transportation of fraudulently obtained monies, (in violation of 18 U.S.C. §§ 1341,1343, 1952, 1956, 1957 and 2314 and Fla. Stat. §§895.02(8)(b), 895.02(8)(a)48, 895.02(a)43, 895.02(8)(a)23 . As part of this pattern, continuing over the course of years, Defendants and Landfill Owners, though their Enterprise, sold bogus FNS credits and other Tax Shelter Schemes beginning as early as 2005. In particular, without limitation, Defendants and Landfill Owners in violation of Fla. Stat. §895.02(8)(b), employed the Postal Service and/or private or commercial interstate carriers and/or interstate wire communications to send their retainer letters, phony invoices, tax advice and tax information statements, subscription

agreements and other materials associated with the bogus FNS credits to Plaintiffs and Class Members who purchased bogus FNS credits and other Tax Shelter Schemes.

186.    Plaintiffs are entitled to recover damages that reasonably flow from the Defendants' pattern of unlawful activity in promoting, facilitating and misrepresenting the business purpose and legality of the Enterprise and FNS Credits being sold, including but not limited to tax, penalties and interest attributable to the bogus FNS credits, attorneys and accountant's fees, and such other and further damages as reasonably flow therefrom, including but not limited to loss of use of the funds expended in return for the bogus FNS credits.

187.    Plaintiffs' damages were a reasonably foreseeable result of the Defendants' pattern of unlawful activity.

188.    Plaintiffs are entitled to compensatory and treble damages and attorneys' fees and costs.

WHEREFORE, for all of the foregoing reasons, Plaintiffs, on behalf of themselves and the other Class Members, request this Honorable Court enter judgment in their favor and against all Defendants, for an amount in excess of $75,000, including professional fees and punitive damages, and for such other and further relief as this Court shall deem just and proper.

## COUNT II – BREACH OF FIDUCIARY DUTY

189.    Plaintiffs repeat and reallege each and every prior allegation in Paragraph 1 – 188 as fully set forth herein.

190.    The Defendants represented and advised Plaintiffs and other potential Class Members regarding their purchase of the FNS credits.  As such, the Defendants owed a fiduciary duty to Plaintiffs and other potential Class Members.

191.     The Defendants breached their fiduciary duty to the Plaintiffs and to other Class

Members by:

      a.   Failing to advise Plaintiffs and other potential Class Members of the true tax
implications of their purchase;

      b.   Failing to provide Plaintiffs and other potential Class Members complete and
accurate information known to Defendants regarding the structure of Plaintiffs'
and other potential Class Members' purchase to give them the opportunity to
make an informed decision as to whether they should purchase;

      c.   Failing to advise Plaintiffs and other potential Class Members that purchasing
the FNS credits would potentially subject Plaintiffs and other potential class
members to taxes, penalties and unnecessary costs;

      d.   Failing to advise Plaintiffs and other potential Class Members that FNS credits
did not qualify as Section 29/45K status because of the manner in which they
were created;

      e.   Failing to disclose and explain to Plaintiffs and to other potential Class
Members the implications of Defendants' common representation of multiple
clients;

      f.   Failing to advise Plaintiffs and other potential Class Members of their right to
be independently represented; and

      g.   Failing to put the interests of the Plaintiffs and other potential Class Members
ahead of their own interests when the Defendants failed to support the
transactions when such transactions were challenged by the IRS, to avoid
criminally implicating themselves, resulting in the imposition of additional tax,
interest and penalties.

192.     As a direct and proximate result of one or more of the aforementioned breaches, the

Plaintiffs and other potential Class Members have suffered damages including but not limited to

loss of property, interest thereon, unnecessary tax liability, penalties and interest thereon, and

unnecessary professional fees.

WHEREFORE, for all of the foregoing reasons, Plaintiffs, on behalf of themselves and the

other Class Members, request this Honorable Court enter judgment in its favor and against the

Chuhak Defendants, for an amount in excess of $75,000, including professional fees and punitive damages, and for such other and further relief as this Court shall deem just and proper.

## COUNT III – AIDING AND ABETTING

193.    Plaintiffs and other potential Class Members incorporate and re-allege Paragraphs 1 - 192 as if fully stated herein.

194.    At all times relevant, the Landfill Operators owned and/or helped control the Green Gas Arrangement and had intimate knowledge of its structure, function, production and dealings.

195.    At various times in between 2005 and June of 2006, the Defendants (and particular Defendants Stern and Kerkstra) and the Landfill Operators (and particularly Horrell) stated to Plaintiffs' representative, and to other potential class members, that the tax credits being sold through the entities set up by Defendants qualified for FNS tax credits under Section 29/45K, that the landfills were generating and had generated sufficient energy from landfill gas such that tax credits were available in excess of the amount to be paid by Plaintiffs and Class Members, and that such tax credits were validly claimable on the tax returns of Plaintiffs and Class Members

196.    At the times of the aforesaid representations, the Defendants and the Landfill Operators knew or should have known that they were materially false in that: (a) the majority of the landfills were incapable of generating any energy from landfill gas, much less energy in amounts sufficient to create FNS credits in excess of the amounts being paid by Plaintiffs and Class Members, (b) there was no plan to bring the majority of landfills into a state of being capable of generating energy from landfill gas, much less energy in amounts sufficient to create FNS credits in excess of the amounts being paid by Plaintiffs and Class Members, (c) those few that were capable of generating energy from landfill gas were not all operational during the entirety of 2005, and thus incapable of generating energy in amounts sufficient to create FNS credits in excess

of the amounts being paid by Plaintiffs and Class Members, and (e) almost no records were being created and kept as would be required to establish the amount of energy actually generated as would be necessary for Plaintiffs and Class Members to validly and appropriately claim FNS credits on their respective returns.

197.    The aforesaid misrepresentations were made with the intention that Plaintiffs and the Class Members would rely of the truth of the representations asserted by paying over money as consideration for the receipt of valid and claimable FNS credits.

198.    The aforesaid misrepresentations were made with knowledge that Plaintiffs and the Class Members would rely on the Defendants as purported experts on the subject of FNS tax credit structures and the perceived legitimacy of the Defendants having structured the mechanisms by which the purported FNS credits would be claimable by Plaintiffs and the Class Members.

199.    Subsequent to Plaintiffs' and the Class Members' purchase of the purported FNS credits, and by virtue of the structure devised by the Defendants, the Defendants and the Landfill Operators thereafter owed a fiduciary duty of care and loyalty to Plaintiffs and to other potential class members by virtue of their position of ownership and operation of the Green Gas Arrangement.

200.    The Landfill Operators breached their fiduciary duty by falsely representing to Plaintiffs and to other potential class members that they had validly obtained FNS credits through the Green Gas Arrangement by issuing schedule K-1's that the Defendants and the Landfill Operators knew or should have known were false for the set forth in paragraph 196 above, and without telling Plaintiffs and the other potential class members of those matters set forth in paragraph 196 above.  Plaintiffs and other potential class members did not learn of any of those matters until the year 2014, and those matters were not full adjudicated until August 14, 2018.

201.    The Defendants and the Landfill Operators knew or should have known that Plaintiffs' and other potential class members could not claim Section 29/45K tax credits due to the manner in which the Landfill Operators managed and operated the Green Gas Arrangement, however, revealing same would have revealed the falsity of the representations set forth in paragraph 195 above.

202.    The Defendants were intimately involved in the creation of the Green Gas Arrangement and worked closely with the Landfill Operators to market the FNS credits.

203.    At all relevant times, the Defendants were aware that the Green Gas Arrangement was not operating in accordance with the requirements of Section 45K of the Tax Code.

204.    Despite this, the Defendants continued to provide legal services to the Landfill Operators to structure and market the Green Gas Arrangement so as to defraud Plaintiffs and other class members and assisted in soliciting purchasers for the Green Gas Arrangement, being regularly aware of their role to legitimize the purported validity of the FNS credits they knew or should have known were bogus.

205.    Further despite this, the Defendants thereafter prepared schedule K-1 statements and mailed them to Plaintiffs and the other potential class members reporting FNS tax credits that the Defendants knew or should have known could not be claimed under Section 29/45K, being regularly aware of their role to legitimize the purported validity of the FNS credits they knew or should have known were bogus.

206.    The Defendants solicited Plaintiffs and other potential class members without disclosing information that the FNS credits would not meet all of the statutory requirements and therefore would be disallowed. The Chuhak Defendants failed to advise Plaintiffs and other potential class members that they would receive no tax benefit.

207.    The Defendants materially assisted the Landfill Operators to monetize FNS credits they knew or should have known were bogus by creating the Green Gas Arrangement, soliciting Plaintiffs and other potential class members, and issuing schedule K-1 statements that they knew or should have known were false and therefore in breach of the Landfill Operator's fiduciary duties by virtue of their position of ownership and operation of the Green Gas Arrangement.

208.    Plaintiffs and other potential class members in fact relied on the misrepresentations of the Landfill Operators and the Defendants by purchasing the purported tax credits and by subsequently claiming those bogus tax credits instead of paying income tax in the amount of those purported credits, and a direct and proximate result of one or more of the aforementioned acts, Plaintiffs and other potential class members suffered damages including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

WHEREFORE, for all of the foregoing reasons, Plaintiffs, on behalf of itself and the other Class Members, request this Honorable Court enter judgment in its favor and against the Defendants, for an amount in excess of $75,000, including professional fees and punitive damages, and for such other and further relief as this Court shall deem just and proper.

## COUNT IV – PROFESSIONAL NEGLIGENCE

209.    Plaintiffs and other potential class members incorporate and re-allege Paragraphs 1 - 208 as if fully stated herein

210.    At all relevant times, Defendants represented the Plaintiffs and advised the Plaintiff, through Plaintiffs representatives, to invest in the Green Gas Arrangement. Specifically, the Defendants advised through their representatives that the Plaintiffs would receive Section 29/45K FNS credits.

211.    As such, Defendants owed a duty of care to act as reasonably careful attorneys.

212.    Defendants breached their duty in one or more of the following ways:

    a.    Failed to advise of the true tax implications of their investment;

    b.    Failing to provide complete and accurate information regarding the structure of the Green Gas Arrangement to allow the opportunity to make an informed decision on whether or not to invest in the Trust;

    c.    Failing to advise that investing in the Green Gas Arrangement would subject Plaintiffs to tax, penalties, interest and unnecessary costs;

    d.    Failing to advise that the Green Gas Arrangement did not qualify as an accepted structure under Section 29/45K; and

    e.    Failing to advise that there is a right to be independently represented by another attorney in the transaction.

213.    As a direct and proximate result of the aforementioned breaches, the Plaintiffs suffered damages including, but not limited, the loss of investment, unnecessary tax liability, and unnecessary professional fees.

WHEREFORE, for all of the foregoing reasons, Plaintiffs, on behalf of themselves and the other Class Members, request this Honorable Court to enter judgment in their favor and against the Chuhak Defendants, for an amount in excess of $75,000, including professional fees and punitive damages, and for such other and further relief as this Court shall deem just and proper.

## COUNT V – FRAUD

214.    Plaintiffs and other potential class members incorporate and re-allege Paragraphs 1 - 213 as if fully stated herein.

215.    At all times relevant, the Defendants knew the Green Gas Arrangement was seriously flawed and would not qualify for FNS tax credits under Section 29/45K for the reasons stated in paragraph 196 above.

216.    Despite this, Defendants advised Plaintiffs and other potential class members that the FNS credits being sold would qualify all individuals for tax credits under Section 45K as set forth in paragraph 195 above.

217.    Defendants knew this statement was false and that their representation that purchase of the FNS credits would allow Plaintiffs to legally claim tax credits was also false.

218.    Defendants did not advise Plaintiffs or other potential class members that their purchase would not meet the statutory requirements and that little or no tax benefit would be realized.

219.    Defendants made the aforementioned statements about the FNS credits to induce Plaintiffs and other potential class members to purchase.

220.    Plaintiffs and other potential class members relied upon Defendants' false statements when they made the decision to purchase the FNS credits.

221.    Subsequent to the purchase, the Defendants issued schedule K-1 statements to Plaintiffs and other potential class members reporting FNS credits which Defendants knew were not legally qualified.

222.    In the alternative, the Defendants knew that schedule K-1 statements were being sent to Plaintiffs and other potential class members who had been told that they would be purchasing qualified FNS credits, but failed to alert the Plaintiffs and other potential class members that FNS credits reported in the applicable K-1 was false.

223.    Plaintiffs and other potential class members were injured by their reliance on Defendants' false statements.

224.     The aforementioned false statements caused Plaintiffs and other potential Class Members damage including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

WHEREFORE, for all of the foregoing reasons, Plaintiffs, on behalf of themselves and the other Class Members, request this Honorable Court enter judgment in its favor and against all Defendants, for an amount in excess of $75,000, including professional fees and punitive damages, and for such other and further relief as this Court shall deem just and proper.

## COUNT VI – CIVIL CONSPIRACY

225.     Plaintiffs and other potential Class Members incorporate and re-allege Paragraphs 1- 224 as if fully stated herein.

226.     By way of the Landfill Operators' close relationship with the Defendants, they were able to work in concert to sell bogus FNS credits.

227.     The Landfill Operators and the Defendants worked together to set up the Green Gas Arrangement. It is already known that the Chuhak Defendants drafted many of the fraudulent documents at issue in this case.

228.     All Defendants then engaged in a nationwide solicitation effort to sell the bogus FNS credits that were being funneled through the Green Gas Arrangement.

229.     At all times, all Defendants knew that the FNS credits being sold were not in compliance with the applicable tax code sections and would not produce the intended benefit to the purchasers.

230.     The Chuhak Defendants and the Landfill Operators acted in furtherance of their agreement to sell bogus FNS credits by taking the following acts:

a. Designing, forming, and implementing the Green Gas Arrangement as an entity by which they could perpetrate their illegal tax scheme resulting in profit to the Defendants at the expense of Plaintiffs and other Class Members;

b. Representing that the Green Gas Arrangement was set up for a legitimate purpose;

c. Providing advice that the purchase of FNS credits from the Green Gas Arrangement would result in Plaintiffs and the Class Members being able to claim those credits on their respective tax returns;

d. Failing to disclose the illegal nature of their tax scheme;

e. Participating in the preparation and filing of the false and fraudulent income tax returns in connection with the Green Gas Arrangement; and

f. Submitting false and misleading information to the Internal Revenue Service in connection to its inquiries into the tax credits being claimed by the Plaintiffs and other Class Members.

231.     The above acts were in concert and in furtherance of the illegal scheme to sell bogus FNS credits.

232.     The conspiracy among the Defendants resulted in damage to the Plaintiffs and other class members including, but not limited to, the loss of property, unnecessary tax liability, and unnecessary professional fees.

WHEREFORE, for all the foregoing reasons, Plaintiffs, on behalf of themselves and the other Class Members, request this Honorable Court enter judgment in their favor and against all Defendants, for an amount in excess of $75,000, including professional fees and punitive damages, and for such other and further relief as this Court shall deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demands a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the other Class Members, respectfully pray:

A.      This Honorable Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action be given to the Class;

B.      The acts alleged herein be adjudged and decreed to be unlawful in violation of the state claims asserted herein;

C.      The Class recover three-fold the damages determined to have been sustained by them pursuant to Fla. Stat. §895.02, and that joint and several judgments be entered against Defendants in favor of the Class;

D.      The Class recover the costs and expenses of suit; pre- and post- judgment interest, and reasonable attorney fees as provided by law;

E.      Compensatory damages in an amount to be ascertained at trial and/or rescission;

F.      Punitive or exemplary damages in an amount to be ascertained at trial;

G.      Additional damages pursuant to applicable state or federal law;

H.      Reasonable attorneys' fees and costs and;

I.      Disgorgement of fees paid to all Defendants;

J.      All other relief, in law or in equity, to which Plaintiffs and the Class Members may be entitled.

Dated this 7th day of December, 2018.

Respectfully submitted,

**SWEETAPPLE, BROEKER & VARKAS, P.L.**
44 W. Flagler Street, Suite 1500
Miami, Florida 33130
Tel.: (305) 374-5623
Fax: (305) 358-1023
*Attorneys for Plaintiffs*

By:     /s/ Kadisha D.  Phelps
Kadisha D. Phelps, Esq.
Florida Bar No: 033635
kadisha@broekerlaw.com
DOUGLAS C. BROEKER, ESQ.
Florida Bar No. 306738
doug@broekerlaw.com

and

**KONICEK & DILLON, P.C.**
*Counsel Admitted Pro Hac Vice*
70 W. Madison, Suite 2060
Chicago, IL 60602
Tel.: (312) 328-9166

By:     /s/ Amir R. Tahmassebi
AMIR R. TAHMASSEBI, ESQ.
Illinois Bar No. 6287787
amir@konicekdillonlaw.com
DANIEL F. KONICEK, ESQ.
Illinois Bar No. 6205408
jennifer@konicekdillonlaw.com
MICHAEL J. CORSI, ESQ.
Illinois Bar No. 6289269
mcorsi@konicekdillonlaw.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been filed with the Clerk by using CM/ECF system which will send a notice of electronic filing on the following counsel of record in this case on this 7th day of December, 2018 to: **David S. Hendrix, Esq**., david.hendrix@gray-robinson.com, Gray Robinson, P.A., 401 East Jackson Street, Suite 2700, Tampa, Florida 33602; **Michael J. Flaherty, Esq**., mflaherty@fylegal.com, ksesterhenn@fylegal.com, **Timothy P. Mahoney, Esq**., tmahoney@fylegal.com, John C. Koechley, Esq., jkoechley@fylegal.com, Flaherty & Youngerman, P.C., 20 S. Clark Street, Suite 1050, Chicago, Illinois 60603; **Ruel W. Smith, Esq**., rsmith@hinshawlaw.com, Hinshaw & Culbertson LLP, 100 South Ashley Drive, Suite 500, Tampa, Florida 33602; and **Terrence P. McAvoy, Esq**., tmcavoy@hinshawlaw.com, Hinshaw & Culbertson LLP, 151 North Franklin Street, Suite 2500, Chicago, Illinois 60606.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-I (A).*

By:     /s/ Kadisha D.  Phelps
        Kadisha D. Phelps, Esq.
        Florida Bar No: 033635
        kadisha@broekerlaw.com