## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

DUANE STARKS, JEVON KEARSE,
LAVERANUES COLES, and LITO SHEPPARD,

            Plaintiffs,

v.

CHUHAK & TECSON, P.C., a Professional
Corporation, GARY J. STERN, DAVID SHINER,
and JEANNE KERKSTRA,

            Defendants.

_____/

Case No.: 0:17-CV-62366-JIC

## DEFENDANTS' MOTION TO DISMISS COUNTS I AND V OF PLAINTIFFS' SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendants, Chuhak & Tecson, P.C. ("C&T"), David Shiner ("Shiner"), and Jeanne Kerkstra ("Kerkstra"), by and through their undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss Counts I ("Violations of Fla. Stat. § 772.103 ("Florida RICO")) and V ("Fraud") of Plaintiffs' Second Amended Complaint ("SAC") filed by Plaintiffs, Duane Starks ("Starks"), Jevon Kearse ("Kearse"), Laveranues Coles ("Coles"), and Lito Sheppard ("Sheppard"), and in support thereof, state:

## I.   INTRODUCTION

This case began as a putative class action filed by seven named plaintiffs against ten defendants. [DE 1.]  The class was defined to include all persons who participated in the purported "Green Gas Arrangement" during a three-year time period spanning from 2005 to 2007. [DE 1, ¶ 114.]  The First Amended Complaint defined the putative class identically to the original complaint to include all participants in the "Green Gas Arrangement" for a three-year period, and was filed by four named plaintiffs against four defendants. [DE 112, ¶ 110.]  This Court dismissed Count III, aiding and abetting, Count IV, fraud (other than purported fraud allegations related to post investment K-1 statements), and Count I, Florida RICO, of the First Amended Class Action Complaint, but again granted leave to amend.  [DE 120.]  The SAC abandons all class-related allegations, and asserts in the same counts the individual claims of the four remaining plaintiffs.  At some unspecified date during the last few months of 2005, each of

them separately invested into either Bradshaw Gas or Ciao Gas.[1] [DE 121.]

Despite having narrowed their claims in the SAC to their respective 2005 investments in Ciao Gas or Bradshaw Gas and the 2005 tax credits that they obtained through their respective investments, the SAC contains inflammatory allegations and attaches irrelevant documents respecting the Merrillville Trust, a 2006 carry-forward tax shelter investment involving tax credits obtained in 1997–1999.  Despite acknowledging that their current lawsuit has nothing to do with the 2006 Merrillville Trust investment litigation pending in Illinois [DE 121, ¶ 28], the SAC relies on exhibits that relate only to Merrillville Trust.[2]

Plaintiffs conflate Merrillville Trust allegations with their actual 2005 claims solely to enflame passions.  The actual "Green Gas Arrangement" at issue was examined closely by the government. [DE 112-5, SAC Ex. 6.]  No criminal charges were involved.  The Tax Court case pertaining to Green Gas was a civil case.  No findings of sham, fraud, or criminal conduct were made.  *Green Gas Delaware Statutory Trust v. Comm'r*, 147 T.C. 1 (July 14, 2016).  The Tax Matters Partner Petitioner lost the Tax Court case following a 2016 trial on the merits.  The Tax Court based its decision on its novel interpretation of Section 29/45K, and on the Petitioner's failure to keep adequate records to substantiate the amount of gas produced.

---

[1] Plaintiffs have also abandoned any claims related to investments in Perry Gas General Partnership (*compare* [DE 112 at ¶ 49] *with* [DE 121 at ¶ 49]), presumably recognizing that credits resulting from Perry Gas were not disallowed.

[2] For example, Plaintiffs allege that "Defendants and the Landfill Operators knew that over 95% of the tax credits they were selling were not legitimate. (Ex. 5. November 2, 2006 Memorandum from David Shiner ("Shiner") to Stern)." [DE 121, ¶ 4.]  Exhibit 5, however, addresses only the carry-forward mechanism employed in the Merrillville Trust. [DE 121, at Ex. 5.]  Similarly, Plaintiffs allege that "Stern admitted that other Defendants were actively involved in the scheme to defraud the Plaintiffs and the United States government. (Ex. 3, pg. 8-10)."  Exhibit 3 also relates only to Merrillville Trust investments and has nothing to do with the claims at issue here. [DE 121-3.]  In paragraph 80, Plaintiffs allege that Shiner's grand jury testimony that was only addressing Merrillville Trust admitted that Defendants perpetrated and concealed the fraud to maintain business relationships with the firm's largest client.  [DE 121, ¶ 80.]  This both misstates the testimony and again conflates the Merrillville Trust with their investments at issue here. These references to Merrillville serve only to create confusion and falsely suggest an intentional or fraudulent undertaking that has no application to the Green Gas TEFRA tax structure, or to Plaintiffs' 2005 gas partnership investments.

2

The Appellate Court explained the Tax Court's statutory basis for upholding the disallowance as follows:

> According to the Tax Court, in the context of landfill gas production, a "'facility for producing qualified fuels' under section 45K(f)(1) must allow a taxpayer to capture, sell, or even transform [landfill gas] into energy." 147 T.C. at 49. That conclusion followed from the court's view that Congress enacted Section 45K to 'encourage production of energy from alternative sources to reduce the dependency on imported energy.' *Id.* at 40. Hence, 'the kind of facility Congress had in mind when enacting the [Section 45K] credit would be one that could produce energy or is connected to an energy production facility or is capable of storing or delivering fuel to a customer.' *Id.* at 47. Systems like the venting/flaring landfills at issue here 'do not qualify as a 'facility for producing qualified fuels,'' the court found, because they 'are not meant to produce energy and do not capture any fuels which could be used by someone else for that purpose.' *Id.* at 49.

*Green Gas Delaware Statutory Trust v. Comm'r of IRS*, 903 F.3d 138, 142 (D.C. Cir. 2018).

The Appellate Court declined to delve into the reasoning or merits of the Tax Court's statutory basis for upholding the Internal Revenue Service's disallowance of the credits, other than to note "Section 45K is hardly a model of drafting clarity." *Id*. Instead, the Appellate Court affirmed based on the trial court's evidentiary finding that the Landfill Operators had failed to keep adequate records to substantiate the amount of gas that was produced. "We need not run the statutory issue to ground, however, because the Tax Court's other holding -- that the appellants failed to substantiate the amount of landfill gas that was vented or flared -- more than suffices to resolve this case." *Id*. at 143.

Plaintiffs' SAC contains no specific factual averments supporting their conclusory allegations that Defendants knew that the Landfill Operators failed to keep adequate records to substantiate the amount of landfill gas produced; that Defendants knew that the landfill gas was vented or flared in the first instance; and that Defendants knew in 2005 that such venting or flaring did not meet the "facility" requirements the trial court read into the statute in 2016. There were no regulations with respect to Section 29. The Tax Court's 2016 opinion and Appellate Court's 2018 decision were not available in 2005. No case, regulation, or private letter ruling is alleged to have even existed in 2005 suggesting any prohibition on whether or how the gas was consumed once it was sold to an unrelated third party.[3]

---

[3] In the Tax Court case, it was stipulated that the parties involved in the sale were unrelated. *Green Gas*, 147 T.C. at 67.

Under the present circumstances, to accuse Defendants of *fraud* and *racketeering* for failing to prognosticate that a decade after the statute expired that a Tax Court would read Section 29/45K in light of a definition of "facility" found nowhere in the statute beggars belief. [4] Plaintiffs admit that they were not solicited to invest by Defendants. [5] In the SAC, Plaintiffs concede their only purported contact with Defendants prior to investing occurred as a result of several phone calls from Rappaport to either Kerkstra or Stern in 2005, while Rappaport was performing due diligence on his client's potential investments.

All but one of these calls occurred while Rappaport was in Georgia and Defendants were in their Chicago, Illinois, law office.  The SAC also now makes a minimal effort to show when Plaintiffs invested (no dates are alleged) by indicating they did not receive any of the information identified at ¶ 143 of the SAC until after they had invested.  [DE 121, ¶ 55.]  Among these documents are subscription agreements that Plaintiffs executed.  These agreements contain warnings, non-reliance clauses, and reflect that no guarantee is given that the credits shall be allowed. [6]  The SAC fails to identify whether these agreements were received before or after Plaintiffs received K-1s from the partnership in which they invested and then chose to take these credits on the personal tax returns that Rappaport prepared for them.  The SAC remains silent about what Rappaport told each of the Plaintiffs pertaining to their decisions to invest, the risks of investing in a tax shelter, the implications of no opinion letter by Stern pertaining to their investments, or the significance of the warnings and waivers contained within the subscription agreements that his clients executed.

---

[4] Despite Plaintiffs' allegation that the purported racketeering activity continued up until 2014, Section 29/45K expired under its own terms on December 31, 2007. 26 U.S.C. § 45K(f)(1)(B).

[5] [DE 78, 55:9-11 (Coles); 78:14-16 (Starks); 108:18-19 (Sheppard); 131:10-12 (Kearse)]

[6] *See* [DE 40 at pp. 10-12; DE 40-14, 40-15, 40-16, 40-17, 40-22, 40-23, and 40-27 (Exs. 9B1, 9B2, 9B3, 10B1, 10B2, 11B1, 12B1 to Defendants' original Motion)].  Indeed, Plaintiffs agreed they "relied solely upon [the Subscription] Agreement and the advice of the undersigned's Purchaser Representative(s), if any, and independent investigations made by the undersigned and/or the undersigned's Purchaser Representative(s) . . ." [DE 40-14, Ex. 9B, at Article II.(8).] The individual investors also agreed and represented in Article II. (6) that they had secured independent tax advice with respect to their investment, upon which they solely relied.  [DE 40-14, Ex. 9B at Article II.(6).]

\570107\1 - # 11343165 v1

Previously, this Court struck Plaintiffs' common law fraud, Florida RICO, and aiding and abetting counts. Plaintiffs elected not to replead aiding and abetting as to these Defendants.[7] As for their effort to plead common law fraud and Florida RICO against these Defendants and Stern, Plaintiffs still fail to do so. Accordingly, as detailed more fully below, Count V for fraud and Count I for Civil Florida RICO violations should be dismissed with prejudice.

## II.    LAW AND ARGUMENT

### A.    Count V (Fraud) Should Be Dismissed With Prejudice.

This Court previously dismissed Plaintiffs' fraud Count pursuant to Rule 9(b)'s heightened pleading standard, agreeing with Defendants that Plaintiffs' fraud allegations were not sufficient:

> At a minimum, Plaintiffs are required to identify the allegedly fraudulent misrepresentations made by each Defendant and the circumstances surrounding such representations. They have done so only in general terms. The Complaint undeniably describes a complex fraudulent investment scheme, Defendants' participation in the scheme, and Plaintiffs' victimization by the scheme. Nonetheless, ***it is generally devoid of allegations <u>linking representations by the specific Defendants to the decision of the specific Plaintiffs to purchase their Green Gas interests</u>***. The Complaint alleges only that Defendants employed "subpromoters" to market the Green Gas interests to potential investors, and that '[i]n Plaintiffs['] case, Landfill Operator Horrell brought on Karen Brenner as an unwitting subpromoter. Based on the fraudulent representations of Horrell and the Chuhak Defendants about the legitimacy of the Green Gas Arrangement, Karen Brenner sought out purchasers [including Plaintiffs.]" [Compl. ¶¶ 98-100.] Without greater detail as to the fraudulent misrepresentations made by each Defendant, Plaintiffs have not met their heightened pleading obligation.

[DE 107 at pp. 10–11 (emphasis added) (brackets in original).]

The SAC fails to allege any false statements by either Horrell or Brenner that were conveyed to and relied upon by Plaintiffs. Further, as to all purportedly false statements by Defendants, Plaintiffs still have not provided detail regarding the allegedly fraudulent statements sufficient to meet their heightened pleading obligation. As this Court found, "[n]or do cases like Medalie relieve them of this obligation." [DE 120 at p. 5.]

In *Medalie*, after noting the reasons for Rule 9(b)'s stringency requirements and finding that they had been met, the court noted:

---

[7] To the extent their current aiding and abetting count could nevertheless be read to also apply to any of these Defendants, these Defendants adopt and incorporate Stern's motion to dismiss Count III.

\570107\1 - # 11343165 v1

> Plaintiffs provide the name of the investment purchased, the date it was purchased, and the amount of money they paid for it. Plaintiffs also identified George Bliss as the agent of FSC that made the alleged fraudulent misrepresentations to the plaintiffs . . . Plaintiffs state the time frame in which Bliss contacted the plaintiffs to solicit their business - from late 1984 until February 1985 . . . Plaintiff identified the place where Bliss contacted them - first in the faculty lounge at a school in the Watkins, N.Y. school system and then at the plaintiffs' home . . . Plaintiffs both quote and paraphrase the material representations Bliss made to them at school and at their home.

*Medalie*, 87 F. Supp. 2d at 1307.

The detailed averments discussed in *Medalie* are missing from the SAC.  Instead, Plaintiffs repackage their prior allegations.  Plaintiffs now plead that:

> In Plaintiffs' case, Landfill Operator Horrell brought on Karen Brenner as an unwitting sub promoter. In April of 2005, based on the fraudulent representations of Horrell and the Chuhak Defendants about the legitimacy of the Green Gas Arrangement, Karen Brenner promoted the tax credits to Plaintiffs' representative, Edward Rappaport. In May of 2005, Brenner introduced Rappaport to Defendants Stern and Kerkstra.

[DE 121, ¶ 87.]

Previously, Plaintiffs had left the Rappaport link out of the chain of persons promoting the investments to them, and merely alleged that Brenner "sought out purchasers." [DE 1, ¶ 100; DE 112, ¶ 96.]  Now Rappaport is included, but the SAC remains devoid of what "fraudulent representations" Horrell and the Chuhak Defendants supposedly told Brenner, what Brenner purportedly told Rappaport, and what Brenner's relationship was to Rappaport.[8, 9]

---

[8] In a prior Order, this Court noted that:

> The Named Plaintiffs allege generally that they were approached by an 'unwitting subpromoter' named Karen Brenner. [Comp. ¶ 100.]  But at a May 24, 2018 evidentiary hearing, Named Plaintiffs Coles, Starks, Sheppard and Kearse all testified that there were introduced to the Green Gas investment opportunity by their shared agent: an individual named Ed Rappaport from a now defunct entity called Pro Sports Financial.  The nature of the relationships between Brenner and Rappaport and Brenner and the Named Plaintiffs remains unclear to the Court.

[DE 77, p. 3 n.2.] The SAC does not clarify that nature of these relationships.

[9] Moreover, why is Brenner "unwitting?"  In Rappaport's putative class action in Cook County, Illinois, he labeled Brenner to be a Landfill Operator, or there, a "syndicator," with respect to

\570107\1 - # 11343165 v1

Rappaport, for his part, is a named plaintiff in the *Orton* class action pending in Cook County, Illinois, of which all four Plaintiffs were putative class members at least until they filed the instant suit. [DE 40-5.]   Rappaport's own Complaint in those consolidated proceedings shows that "until September 2005 [at the time he was soliciting investments from Coles, Kearse, and Sheppard [DE 121, ¶ 142]] [Rappaport was] a partner in the tax section with, and agent of, the law firm of Burr & Forman, LLP located in Atlanta, Georgia;" who "[had] advised professional athletes in tax and other legal matters since 2000;" who "enjoyed a national reputation as a skilled and knowledgeable advisor to some of the best known professional athletes in the United States;" and of whom Plaintiffs were clients.  *See* Third-Party Defendant Edward J. Rappaport's Counterclaim, attached hereto as Ex. 1, ¶¶ 2, 30, 31 and at "Nature of the Action."[10]   Thus, a fair reading of the SAC is that Rappaport, an experienced tax attorney who was a partner at a firm in Atlanta, sought out his existing clients to invest in the 2005 Ciao and Bradshaw partnerships.  His limited interactions with Defendants was in the context of his due diligence efforts, questioning the syndicators' attorneys.

Yet even here, the SAC remains devoid of what, if anything, Plaintiffs were told by Rappaport in their investment decision making processes.  Rather, they plead verbal salad: "these misrepresentations were unwittingly and progressively conveyed to Plaintiffs by their representative in July of 2005 to Plaintiff Kearse, in August 2005 to Plaintiff Coles, in September/October to Plaintiff Sheppard, and November of 2005 to Plaintiff Starks." [DE 121, ¶ 142].  It is not clear what this means.  But it is clear that Plaintiffs: (1) heard nothing from anyone other than Rappaport; (2) have not alleged (or even paraphrased) precisely what Rappaport told them to solicit their investments and get them to part with their money or how Rappaport was compensated (knowingly or otherwise); (3) have not alleged the date they

---

Plaintiffs' 2005 investments at issue here. [DE 40-5, at ¶ 6.]  As did Plaintiffs themselves with respect to their Merrillville investments. [DE 40-2 (as a partnership); DE 113-2 (as individually named).]

[10] This Court can take judicial notice of these documents in considering the pending motions without converting them to motion for summary judgment. *U.S. ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 807, 825 (11th Cir. 2015) ("It is well-established that the court may, for 'a proper understanding of protracted litigation . . . draw upon the records in all of the preceding cases,' taking judicial notice of other court proceedings, both federal and state, involving the same parties.")

7

actually invested, or even when or why they invested in relation to whatever Rappaport told them; (4) have not alleged what warnings or advice were conveyed to them; (5) have not alleged where they were when Rappaport solicited their business; or (6) have not alleged the amount they invested.

Additionally, it is abundantly clear from paragraph 140 of the SAC that the representations Plaintiffs claim to be fraudulent (which Defendants only conveyed, allegedly, to tax attorney Rappaport while he was in Georgia) are not actionable as fraud.  Plaintiffs allege (not on information and belief, so they have access to Rappaport) that at some time in May 2005 (after Brenner introduced Rappaport to C&T) [while he was a tax attorney at Burr & Forman] that Stern and Kerkstra, while in Chicago, "knowingly spoke" to Rappaport, in Georgia, via telephone. [DE 121, ¶ 140(a).]  Rappaport did not identify any specific client, but volunteered that he represented professional athletes including many, but without identifying any, that resided in Florida. [DE 121, ¶ 140(a).]

> "At that time" – or rather on that unspecified date in May 2005:
>
> Defendants Stern and Kerkstra told Rappaport that the tax credits being sold through the entities set up by Defendants met all the requirements of Section 29/45K,[11] that investments would result in ownership interests in entities that sold energy that qualified for FNS tax credits under Section 29/45K, that those tax credits were available in excess of the amount to be paid by Rappaport's clients for acquiring an interest in the energy-selling entity, and that such tax credits were validly claimable on the personal tax returns of Rappaport's clients.  The Defendants withheld from Rappaport the fact that the landfills, which purportedly produced the credits, did not have in place the proper equipment to convert gas to energy.  As a result of the foregoing false statements and omissions, the Defendants and Landfill Operators derived substantial profits and other benefits described in Paragraph 126.[12]

[DE 121, ¶ 140.]  The allegations in paragraph 140(b)–(e) are redundant to those in 140(a). [DE 121, ¶ 141(b)–(e).]

"In general, to constitute actionable fraud, a false representation must relate to an existing

---

[11] Section 45K did not exist in May 2005. [DE 121, ¶ 36.]  Further, this statement is at most an opinion being conveyed to a tax professional.

[12] Paragraph 126 references profits through maintaining one of the first biggest clients and the accompanying advancements attorneys obtain by having fee paying clients. [DE 121, ¶ 126.]

\570107\1 - # 11343165 v1

or pre-existing fact . . . an unspecific and false statement of opinion such as occurs in puffing generally cannot constitute fraud." *Cavic v. Grand Bahama Development Co.*, 701 F.2d 879, 883 (11th Cir. 1983); *see also*, *Ingram v. Butter*, No. 14-21392-CIV-WILLIAMS, 2015 U.S. Dist. LEXIS 175437, at *12 (S.D. Fla. Dec. 23, 2015) ("Defendants' evaluation of potential legal results was a statement of opinion, not fact.").

That the tax credits met the requirements of Section 29; that the investments would result in ownership interests in entities that sold energy that qualified for FNS credits under Section 29; and that such tax credits were validly claimable on Rappaport's clients' personal tax returns are clearly nonactionable legal opinions.[13] That the tax credits were available in an amount in excess of the amount of money Rappaport's clients would invest is a statement of a possible future event as the credits were subject to a phase out that could not be calculated until April 2006.[14] And turned out to be true in any event that Plaintiffs were allocated more credits than dollars invested. [DE 52–53.]

That Defendants "withheld" from Rappaport that the landfills "did not have the proper equipment in place to convert gas to energy" rests upon the opinion that such equipment or conversion was needed to generate the credits, as opposed to the statute requiring, as it facially states: that a "qualified fuel," a) be sold by the taxpayer to an unrelated person during the taxable year, and b) the production of which is attributable to the taxpayer; and that landfill gas be a "qualified fuel." 26 U.S.C. § 45K(a)(2)(A) and (B). The words "convert," "conversion," "store," and "electricity" are nowhere to be found in the statute. Moreover, omissions are not actionable as fraud absent a duty, such as a fiduciary relationship, to make such a disclosure. *Friedman v. Am. Guardian Warranty Servs., Inc.* 837 So.2d 1165, 1166 (Fla. 4th DCA 2003). Plaintiffs plead no facts suggesting a fiduciary relationship between Defendants and Rappaport, or between Defendants and Rappaport's unidentified clients (who may or may not live in Florida) during the

---

[13] Indeed, that the credits were "validly claimable" is not only a legal opinion, it is clearly not a guarantee that if challenged, the credits would be sustained. At most, the statement only supports that there is a one-third or greater likelihood of being sustained on the merits. *See* 31 C.F.R. § 10.34(d)(1) (2006) (as eff. July 26, 2002).

[14] 26 U.S.C. § 29(b)(2), (d)(2) (2005). Further, the SAC contains no allegations that the 2005 credits distributed to Plaintiffs were less than the amounts they invested. Had that been the case, Plaintiffs would have been damaged no later than when they received the K-1s and these claims would be time barred.

\570107\1 - # 11343165 v1

purported phone calls.

The SAC now makes it clear that Plaintiffs invested prior to receiving any of the communications identified in paragraph 143 of the SAC. [DE 121, ¶ 55].  No allegations provide any basis to contend that Defendants had a duty to disclose anything to Rappaport.  Rappaport conducted his own due diligence and provided whatever advice he provided to his clients.  None of that information is alleged in the SAC.  No basis exists for Plaintiffs to sue Defendants for fraud based on what information, if any, Rappaport provided to them.

Accordingly, Count V should be dismissed with prejudice.

**B.      Count I (Fla. Civil RICO) Should Be Dismissed with Prejudice**.

Florida's Civil Remedies for Criminal Practices Act provides a private cause of action for "[a]ny person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of s. 772.103."  Fla. Stat. § 772.104(1) (hereafter "Florida Civil RICO").   As this Court stated, Under Section 772.103:

> [i]t is unlawful for any person . . . employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt" Fla. Stat. § 772.103(3).  To prevail, a plaintiff must demonstrate that the defendants (1) caused an injury to the plaintiff's business or property as a result of (2) conducting the affairs (3) of an enterprise (4) through a pattern of (5) criminal activity.  Hibiscus Assocs. V. Bd. Of Trustees, 50 F.2d 908, 920 (11th Cir. 1995); Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A., 938 F. Supp. 825, 827 (S.D. Fla. 1996).

[DE 120, p. 14.]

### 1.  Failure to Plead Each Element Against Each Defendant

As this Court also noted, "[t]he focus of a RICO claim is on the 'individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise.'"  [DE 120, p. 15 (citing *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987)).]  Thus, the elements of RICO must be established as to each individual defendant.  *See Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 468 (11th Cir. 2016); *see also*, *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008).  "The 'plaintiff must allege facts with respect to each defendant's participation in the fraud.'" [DE 120, p. 19]. Plaintiffs have again failed to cure this defect as to Kerkstra and Chuhak and, therefore, Count I should be dismissed with prejudice as to them.

10

### 2.  Failure to Plead an Enterprise

In the prior bout of briefing, Plaintiffs suggested that references to the Green Gas Arrangement as an "association-in-fact" enterprise were included erroneously.  [DE 115 at 6 n.3.]  Plaintiffs have now abandoned all references to "association-in-fact" without providing any other effort to allege an enterprise. [DE 121, ¶¶ 110.]  Under these facts, Plaintiffs have not alleged an enterprise sufficient to support a Florida RICO claim and, therefore, Count I should be dismissed with prejudice.

### 3.  <u>Failure to Plead a Pattern of Predicate Criminal Activity</u>

"Criminal activity" is defined as "any crime that is chargeable by indictment or information" under a laundry list of provisions, including mail fraud, wire fraud, and the state statute regulating securities. *Fla. Stat. § 772.102(1)(b).*  Plaintiffs have not sufficiently pled mail fraud, wire fraud, or securities fraud.[15]

### i.  **Failure to Plead with Specificity**

As this Court stated Rule 9(b) applies to RICO claims that are predicated on fraud.  [DE 120, p. 19.] "To satisfy Rule 9(b), RICO complaints must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud, and must do so with respect to each defendant's participation in the fraud."  [DE 120, p. 19]; *see also*, *Lawrie v. Ginn Dev. Co., LLC*, 656 F. App'x 464, 468 (11th Cir. 2016); *Rogers v. Nacchio*, 2006 U.S. Dist. LEXIS 101855 (S.D. Fla. June 5, 2006), *aff'd* 241 Fed. Appx. 602, 2007 U.S. App. LEXIS 16824 (11th Cir. Fla. 2007).

Plaintiffs' allege that "[i]n order to participate in the Green Gas Arrangement, participants signed various documents prepared by the Defendants, including purported conflict

---

[15] Mere recitation of the elements of a cause of action is insufficient to withstand a Motion to Dismiss, let alone a cause of action subject to the specificity required by Rule 9(b).  Moreover, Plaintiffs have failed to sufficiently allege that Plaintiffs and Defendants were in buyer/seller privity as required to allege securities fraud under Fla. Stat. § 517.301.  *See*, *e.g.*, *Palmer v. Shearson Lehman Hutton, Inc.*, 622 So.2d 1085 (Fla. 1st DCA 1993)( "only when there is privity between the parties involved."); *A.G. Edwards & Sons v. Weinreich*, 572 So.2d 993, 996 (Fla. 2d DCA 1990), *rev'd on other grounds at Barth v. Khubani*, 748 So.2d 260 (Fla. 1999) ("as there was no privity between appellants and appellees, any use of chapter 517 in the proceeding below was error." (emphasis in original)).

of interest waivers." [DE 121, ¶ 55].   As Plaintiffs now allege, these documents were not provided to the participants until after they tendered money to Defendants or the Landfill Operators, as the case may be.  [DE 121, ¶ 55].[16]  Plaintiffs provide a revised list of twelve (12) purported documents that remain insufficient.  [DE 121, ¶ 143].  No allegations exist regarding why any of these documents are false.  Plaintiffs allege eight (8) purported documents "stated" January 1, 2005, without otherwise indicating when the document was received, who received the document, or how the document was transmitted. All twelve (12) documents fail to identify the location of the sender, the location of the recipient, the statement in each purported document that was false or misleading, how the actual statement was false or misleading, how Plaintiffs relied on the statement, how Plaintiffs were damaged by reason of the statement, and which statute each document purportedly violated.  [DE 121, ¶ 144.]  What is clear is that none of these documents can support a contention that they misled Plaintiffs into investing.  Plaintiffs now admit that they invested before receiving any of these documents. [DE 121, ¶ 55.]  Therefore, Paragraph 143 fails to allege predicate acts.

### ii.    Failure to Plead Predicate Acts Prosecutable in Florida

Florida Civil RICO requires two sufficiently pled predicate acts.  *Fla. Stat. § 772.102(4)*. As a prerequisite, the underlying predicate criminal activity must be prosecutable in Florida. *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 681–82 (11th Cir. 2014).  In *Arthur*, the court affirmed the District Court's application of Fla. Stat. § 910.005 as an "element that must be pleaded when the claim involved predicate state law offenses that occurred partially in Florida and partially in another state."  *Id*. at 682.   "Similarly, the [plaintiffs] would also need to allege Florida criminal activity in order to support a Florida [civil] RICO claim based on a *federal law* predicate act."  *Id*. at 682 (emphasis in original).

Plaintiffs now allege that Brenner promoted the tax credits to Plaintiffs' independent "representative" and attorney, Edward Rappaport, in April 2005. [DE 121, ¶ 87.]  Thereafter, Brenner allegedly introduced Rappaport to Defendants Stern and Kerkstra through five (5) phone conversations with Defendants that occurred between May 2005 and late November or early

---

[16] Plaintiffs should know where and when they tendered their money, but they again fail to plead this information.

\570107\1 - # 11343165 v1

December 2005, only the last of which occurred while Rappaport was in the State of Florida.[17] [DE 121, ¶¶ 87, 140]. Even assuming that these allegations do not fail for the same reasons as stated *supra*, Section II at (A) (discussing fraud), Plaintiffs have only alleged a single purported predicate criminal act that was sent to or traveled through Florida. A single predicate act is insufficient to allege a pattern of criminal activity. Therefore, Paragraph 140 fails to allege predicate acts.

### iii. Failure to Plead a Pattern of Criminal Activity

Section 772.102(4) defines "pattern of criminal activity" as "at least two incidents of criminal activity" that are not isolated incidents, which "shall not include two or more incidents of fraudulent conduct arising out of a single contract or transaction against one or more related persons." *Fla. Stat. § 772.102(4)*. As discussed *supra*, Section II at (B)(3)(ii), Plaintiffs have only alleged a single purported predicate act that might be prosecutable in Florida. Regardless of whether the act is prosecutable, a single purported criminal act occurring in the jurisdiction is insufficient to state a pattern of criminal activity. *See*, *e.g.*, *Arthur*, 569 F. App'x at 681–82.

Assuming, *arguendo*, more than one alleged predicate act occurred in Florida, Plaintiffs have yet to establish a pattern of criminal activity. To successfully allege a pattern of racketeering activity, a plaintiff must demonstrate that the predicate acts demonstrated criminal conduct of a continuing nature. *Jackson v. BellSouth Telecomms*, 372 F.3d 1250, 1264 (11th Cir. 2004). The time span of the enterprise can only be demonstrated through specific allegations of criminal activity. *See*, *e.g.*, *Ellis v. Warner*, No. 15-10134-CIV-GOODMAN, 2017 U.S. Dist. LEXIS 22109, at *54 (S.D. Fla. Feb. 16, 2017) ("the relevant time period for closed-ended continuity analysis is the period between the related predicate acts."); *see also*, *H.J. Inc.*, 492 U.S. at 242; *Jackson*, 372 F.3d at 1265.

Here, Plaintiffs' allegations attempt to allege a close-ended pattern predicated on purported criminal conduct occurring from May 2005 [DE 121, ¶ 140(a)] through, at most, April 2006 [DE 121, ¶ 144]. Plaintiffs' conclusory assertion that the conduct continued "through at

---

[17] Defendants respectfully note the substantial change to Plaintiffs' allegations may impact the Court's analyses on personal jurisdiction and choice of law. *See*, *e.g.*, *Rolle v. Branch Banking and Trust Co., as Successor to Bank Atlantic*, Case No. 0:13-CV-60976-RSR, ECF No. 321-1 at 68:11-20 (S.D. Fla. Apr. 30, 2015) (As CEO of Pro Sports Financial, Ed Rappaport "was between his home in Georgia and Florida so he might do one [maybe] two weeks a month in Florida, and then go back to his home in Georgia.").

13

least 2014" is insufficient to demonstrate continuity. [DE 121, ¶ 131.]  Significantly, predicate activity occurring over less than a year is insufficient to state a claim for RICO.  *Jackson*, 372 F.3d at 1266–67 (collecting case).  Under these facts, Plaintiffs have not and cannot allege a pattern of predicate activity and, therefore, Count I should be dismissed with prejudice.

## III.     CONCLUSION

Count I and Count V of Plaintiffs' Second Amended Complaint should now be dismissed with prejudice because after three (3) failed attempts to state a cause of action for Florida Civil RICO and Fraud, Plaintiffs have still not pled the necessary facts to state a claim.  Repackaging prior allegations has not cured the issues that plagued Plaintiffs' prior complaints.

WHEREFORE, Defendants Chuhak & Tecson, P.C., David Shiner, and Jeanne Kerkstra respectfully moves this Court to dismiss with prejudice Counts I and V of Plaintiffs' Second Amended Complaint, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/David S. Hendrix
**David S. Hendrix, Esq.**
Florida Bar No. 827053
David.hendrix@gray-robinson.com
**Lauren Baio, Esq.**
Florida Bar No. 1002909
Lauren.baio@gray-robinson.com
**GRAY ROBINSON, P.A.**
401 East Jackson Street, Suite 2700
Tampa, Florida 33602
(813) 273-5000/(813) 273-5145 (fax)
*Attorneys for Defendants*

\570107\1 - # 11343165 v1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via e-mail, but not filed in accordance with Local Rule 26.1(b), on the following counsel of record in this case on this 11th day of February, 2019 to:

Kadisha D. Phelps, Esq.
Sweetapple, Broeker, & Varkas, P.L.
44 W. Flagler Street, Suite 1500
Miami, FL 33130
Kadisha@broekerlaw.com
docservice@broekerlaw.com

Daniel F. Konicek
Amir R. Tahmassebi
Konicek & Dillon, P.C.
21 W. State Street
Geneva, IL 60134
amir@konicekdillonlaw.com
Jennifer@konicekdillonlaw.com
mcorsi@konicekdillonlaw.com

Michael J. Flaherty, Esquire
Timothy P. Mahoney, Esquire
John Koechley, Esquire
Flaherty & Youngerman, P.C.
20 S. Clark Street
Suite 150
Chicago, Illinois 60603
mflaherty@fylegal.com
tmahoney@fylegal.com
jkoechley@fylegal.com

Ruel W. Smith, Esquire
Hinshaw@Culbertson, LLP
100 S. Ashley Drive
Suite 500
Tampa, FL 33602
tmcavoy@hinshawlaw.com

*/s/ David S. Hendrix, Esq.*
David S. Hendrix, Esq.

\570107\1 - # 11343165 v1